COMMONWEALTH *vs.* EDWIN RIVERA.

No. 88-P-135.

Worcester.   November 14, 1988. — February 23, 1989.

Present: GREANEY, C.J., KAPLAN, & ARMSTRONG, JJ.

*Probable Cause. Arrest. Search and Seizure,* Arrest. *Constitutional Law,* Search and seizure.

At the hearing on a criminal defendant's motion to suppress controlled substances seized from his person by police, the Commonwealth established that there was probable cause for the arrest and search with evidence that the defendant had been observed by experienced investigators in a place known to be of high incidence of drug trafficking, in possession of a "baggie," a type of container reasonably identifiable as used in illicit drug traffic, which the defendant attempted to conceal in his trousers in an evasive reaction to his noticing the police officers' approach. [43-46]

INDICTMENTS found and returned in the Superior Court Department on January 15, 1986.

A pretrial motion to suppress evidence was heard by *Robert V. Mulkern,* J., and the case were heard by *Gerald F. O'Neill,* J.

*Jane Larmon White,* Committee for Public Counsel Services, for the defendant.

*Katherine E. McMahon,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J.   Indicted on two counts of possession of controlled substances, cocaine and heroin, with intent to distribute, the defendant Rivera moved before trial to suppress these narcotics found on his person at the time of his arrest. The motion was heard and denied with findings, ruling, and order. The defendant stood trial, jury waived, and was convicted of the offenses. He appeals, claiming error in the refusal to suppress.

Evidence at the pretrial hearing consisted of the testimony of Officer Daniel O'Connor, a member of the vice squad of the

Worcester police department. The defendant did not cross-examine or offer evidence on his own behalf.

The facts found, supplemented by details from the transcript of the hearing on the motion, were these. About 9:00 A.M., October 7, 1985, a sunny morning, O'Connor and Officer Paul Ryan, also of the vice squad, both in plainclothes, were driving on patrol in an unmarked car on New Vista Lane in the Great Brook Valley area of Worcester. At that date the particular location, centering at 1-7 New Vista Lane, near an intersection with Constitution Avenue, was known to the police as "the point," that is, a specific place of high drug activity, where cocaine and heroin could readily be obtained at any hour of the day or night. The point had been at the New Vista location for three or four months; its location would change from time to time, in part to thwart or slow arrests by the police.

O'Connor, the driver, spotted at his right the defendant and two other men standing on the sidewalk at the point. The defendant was facing the car as it approached. At a distance estimated as about twenty yards from the defendant, O'Connor saw him holding a plastic baggie in his hand at chest level. The baggie was in O'Connor's clear view, but at that distance he could not see its contents through the plastic. O'Connor and the defendant made "eye contact." The defendant, then, in one movement, commencing to turn his back, plunged the baggie inside the front of his pants. O'Connor pulled up the car next to the men. He left the car, grabbed the defendant, and reached into the defendant's pants and drew the baggie from the crotch area. It contained a number of packets evidently of drugs (and later confirmed as such): ten silver packets of cocaine, four yellows of cocaine, seven grays of heroin, and one rainbow of heroin.[1]

O'Connor, an experienced narcotics officer, as was Ryan, recognized the baggie at a distance as a type regularly used to contain and carry smaller packets of cocaine and heroin.

---

[1] Testimony at the later trial indicated retail prices as follows: ten dollars for a silver packet, twenty-five dollars for yellow, thirty dollars for gray, and thirty dollars (apparently) for rainbow.

The judge found that O'Connor and Ryan, on the basis of their observations as experienced narcotics officers, had "mentally recorded information which was sufficient to warrant a prudent man in believing that the defendant Rivera was at that time committing a crime. At the very least, that crime being possession of a controlled substance."

We agree that the arrest and search were based on probable cause.[2] Accordingly, the motion to suppress failed.

Each of four elements in the present case tended to prove that the defendant was currently committing a crime: (1) the defendant was in possession of what appeared to be evidence of a crime, a baggie reasonably identified as a type of container regularly used in illicit drug transactions; (2) the defendant reacted with behavior reasonably interpreted to be evasive or furtive; (3) the encounter was in a place of high incidence of drug traffic; (4) experienced investigators on the scene evaluated the event as indicating present criminal conduct on the part of the accused. It may be assumed that no one of these elements, standing alone, would suffice to establish probable cause for arrest and search.[3] However, it is settled by numerous decisions that a concurrence of the first and second factors — identification of the baggie in the person's possession and evasive reaction by him — readily cumulate to provide probable cause. The inference is measurably strengthened when the site of the episode is a notorious drug market, and is further enhanced by the opinion on the whole matter of experienced officers responsible for the arrest.

---

[2] The requirements of probable cause for arrest may be taken to equate here with those for search, see *Commonwealth* v. *Tarver,* 369 Mass. 302, 307 (1975), and it is not important whether the arrest is supposed to have occurred just before, immediately after, or concurrently with the search. See *Rawlings* v. *Kentucky,* 448 U.S. 98, 111 (1980); *Commonwealth* v. *Avery,* 365 Mass. 59, 65 (1974); *Commonwealth* v. *Brillante,* 399 Mass. 152, 154 n.5 (1987).

[3] In the present case the container was capable of use for a lawful as well as an unlawful purpose; where a container appears to have but one use, and that an unlawful one, its identification, standing alone, may be enough to justify seizure. Note the tied-off, deflated balloon in *Texas* v. *Brown,* 460 U.S. 730, 742-743 (1983).

A sampling of the decisions referred to appears in 2 LaFave, Search & Seizure § 3.6(d), at 58-62 (2d ed. 1987), where the author writes: "As the Supreme Court concluded in [*Sibron*] v. *New York*, [392 U.S. 40, 66-67 (1968)], 'deliberately furtive actions . . . at the approach of strangers or law officers are strong indicia of mens rea, and when coupled with specific knowledge on the part of the officer relating the suspect to the evidence of crime, they are proper factors to be considered in the decision to make an arrest.' Thus, if the police see a person in possession of a highly suspicious object or some object which is not identifiable but which because of other circumstances is reasonably suspected to be contraband, and then observe that person make an apparent attempt to conceal that object from police view, probable cause is then present." (Footnotes omitted.)[4] Characteristic situations cited by LaFave are those where an officer sees a manila envelope or a hand-rolled cigarette symptomatic of a transaction in, or possession of, drugs, and the suspect, alerted to the near possibility of detection, attempts to discard or conceal the evidence. See *Price* v. *United States*, 429 A.2d 514, 516-517 (D.C. 1981); *State* v. *Ruffing*, 127 N.H. 370, 371 (1985); *State* v. *Maguire*, 129 N.H. 165, 170 (1987); *State* v. *Hunt*, 15 Or. App. 76, 79-80 (1973); *Hollis* v. *Commonwealth*, 216 Va. 874, 876-877 (1976). The *Price* case is an example of the court's remarking also upon the place of the arrest and the experience of the arresting officer.

Although we speak of "elements" or features of the cases, it is to be understood that no two cases are precisely alike; each has its singular aspects. In our jurisdiction, no decided case squares exactly with the facts of the present case, but the trend of decisions is evident, and *Commonwealth* v. *Ortiz*, 376 Mass. 349, 350-351, 353-355 (1978), where suppression was refused, may be taken to represent them all. There officers in an unmarked car through binoculars observed a parked car near Blackstone Park in Boston, an area of heavy drug traffic.

---

[4] Decisions to like effect are assembled in Annot., 45 A.L.R. 3d 581 (1972 & Supp. 1988).

The occupant — the defendant — left the car and showed a man who approached a yellow packet believed to resemble the type of a "dime" bag of heroin. As the officers started up their vehicle with a screech of tires, the defendant threw the yellow packet into the car and both men fled into the park. The packet, retrieved, in fact contained the drug. The defendant was apprehended but the other man was not found. Here are facts similar on principle to those at bar. We note that in *Ortiz* the approaching man was the defendant's brother, known to the police as having a record of prior drug arrests; but we suggest that the result should have been the same if that factor were absent. (In *Ortiz* there was a question whether the circumstances were "exigent" thus dispensing with the need for a warrant. No such doubt arises here.) See also, on varying facts, *Commonwealth* v. *Battle*, 365 Mass. 472 (1974); *Commonwealth* v. *Brillante*, 399 Mass. 152 (1987); *Commonwealth* v. *Blatz*, 9 Mass. App. Ct. 603 (1980); *Commonwealth* v. *McShan*, 15 Mass. App. Ct. 921 (1983). Cf. *Commonwealth* v. *Avery*, 365 Mass. 59 (1974); *Commonwealth* v. *Wooden*, 13 Mass. App. Ct. 417, 418-422 (1982); *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685 (1984).

In our view the Commonwealth sustained its burden to show that the officers acted on probable cause, that is, a "requirement . . . satisfied by showing facts which would warrant a man of reasonable caution in believing that certain action is appropriate." *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 744 (1981). The officers must have entertained rationally "more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt." *Commonwealth* v. *Bond*, 375 Mass. 201, 210 (1978). The defendant tries, vainly, to demand satisfaction of a much more rigorous standard here. After all, he says, conceivably the concealment of the baggie was an innocent act.[5] The point

_____

[5] The defendant seems to be contending that a person's reaction to the approach of someone in plainclothes, rather than in uniform, cannot be interpreted as evasive and is necessarily of minimal probative value. Surely no such generalization can be supported; all turns on the particulars of the

rather is that the experienced officers in the circumstances of the case could reasonably have concluded with a "practical, nontechnical" probability (*Brinegar* v. *United States*, 338 U. S. 160, 176 [1949]) that the gesture was an attempt at evasion.

*Judgments affirmed.*

case in its milieu. Here the defendant's instant move to his pants could count materially toward probable cause.