COMMONWEALTH *vs.* RICHARD GARCIA
(and two companion cases[1]).

No. 91-P-615.

Worcester. October 5, 1992. - June 24, 1993.

Present: KASS, SMITH, & IRELAND, JJ.

*Controlled Substances. Constitutional Law*, Search and seizure. *Probable Cause. Arrest. Search and Seizure*, Probable cause, Threshold police inquiry, Plain view, Expectation of privacy, Automobile.

At the hearing on motions by criminal defendants to suppress controlled substances seized as a result of a warrantless search of an automobile stopped by a State trooper, who had pulled the vehicle over because it had a defective license plate light and then observed an apparent empty plastic "baggie" inside the vehicle in plain view, the Commonwealth failed to establish that there was probable cause for the seizure of the baggie, where the tropper provided no evidence of any characteristic of the baggie that would have indicated it was being used for an illegal purpose; where the trooper observed nothing in the vehicle or in the conduct of its occupants which, in conjunction with his observation of the baggie, would have supplied probable cause for the warrantless search; and where, in this case, the trooper's experience, coupled with his observation of an apparently empty baggie, was insufficient to provide probable cause to conduct a warrantless search of the vehicle. [649-652]

INDICTMENTS found and returned in the Superior Court Department on January 18, 1990.

Pretrial motions to suppress evidence were heard by *George C. Keady, Jr.*, J., and the cases were tried before *Robert V. Mulkern*, J.

*Casimir S. Lopata* (*Stephen L. Pearson* with him) for Richard Garcia.

*Margaret G. Barmack* for Filipe Pichardo.

---

[1]The two companion cases are against Filipe Pichardo.

*William E. Loughlin*, Assistant District Attorney, for the Commonwealth.

SMITH, J. The defendants, Richard Garcia and Filipe Pichardo, were indicted for the crimes of trafficking in cocaine and possession of cocaine with intent to distribute. Pichardo also was indicted for possession of marihuana. After a hearing, a Superior Court judge denied the defendants' motions to suppress all evidence obtained as a result of a warrantless search of an automobile. After trial, a jury returned a guilty verdict against Garcia on the indictment charging him with trafficking in cocaine and a not guilty verdict on the indictment charging him with possession of cocaine with intent to distribute. Pichardo was found guilty on all three indictments in which he had been charged.[2]

On appeal, both defendants claim that the motion judge committed error in denying their suppression motions. Garcia also claims error in the denial of his motion for a required finding of not guilty. He further claims that he was denied the effective assistance of counsel as guaranteed by the United States Constitution and the Declaration of Rights of the Massachusetts Constitution.

After the hearing on the defendants' motions, the motion judge filed a memorandum of decision containing his findings of fact. We summarize those facts. On October 16, 1989, at about 1:20 A.M., Trooper John Hackett of the Massachusetts State police was on duty in uniform and in a marked cruiser on Route 84 near Sturbridge. He observed a Pontiac Grand Prix automobile pass his cruiser. The trooper noted that the Pontiac's rear license plate was not illuminated. He pulled his cruiser onto the highway and, with his blinker lights on, proceeded to follow the automobile. After driving a short distance, the automobile drove into a rest area and stopped; the cruiser followed, stopping about ten feet behind the automobile. The trooper got out of his cruiser and approached the automobile.

---

[2]Pichardo's conviction of possession of marihuana was placed on file.

Standing slightly to the rear of the driver's door, the trooper noticed that there were three passengers in the automobile in addition to the operator. Two of the passengers were the defendants, Garcia and Pichardo; the operator was one Brito. The trooper asked for Brito's license and for the registration. Pichardo produced a registration for the automobile but Brito was unable to produce an operator's license.

The trooper returned to his cruiser to check the registration. He learned that the vehicle was registered to a Dorchester resident; the registration was valid, and the automobile had not been reported stolen. The trooper then returned to the automobile. It was his intention to allow someone other than Brito to drive the automobile if a license could be produced. He also intended to issue a citation to Brito for a defective plate light and for operating a motor vehicle without a license.

As the three passengers were reaching into their pockets for their licenses, the trooper used his flashlight to illuminate the interior of the automobile. He saw a transparent glassine baggie measuring one inch by one and one-half inches. The trooper had been on the force for about three years and, in the prior ten days, had completed a controlled substance course. The trooper recognized the baggie as being a type often used for distribution of controlled substances.[3] The baggie was on the floor of the back seat area between the left leg of the defendant, Garcia, and the driver's side wall. As a result of seeing the baggie, the trooper ordered Brito and the three passengers, including Garcia and Pichardo, from the automobile. He ordered them to stand toward the front of the automobile and pat-frisked each of them.

The trooper next opened the door of the automobile and seized the baggie from inside the automobile. He then illuminated it with his flashlight, and it appeared to him, according to the motion judge, "to have some sort of powder residue therein," which, based on his recent training, "made the

---

[3]The trooper testified that as a result of his training he thought "that it was possibly a drug packaging." He was never asked and, therefore, did not testify that the *size* of the baggie played any part in his thinking.

trooper think it to be a controlled substance." The trooper then noticed a brown leather jacket on the back floor close to the transmission hump. He searched the pockets of the jacket, and in one of them he found another baggie containing a green vegetable-like substance which he thought was marihuana.[4] The trooper then noticed that the rear seat cushion was loose. In the space between it and the back, the trooper found a dollar bill which was folded and contained a white powdery substance. Pichardo indicated that the discovered items belonged to him, and he was arrested and placed in the back seat of the cruiser.

The trooper radioed for back-up assistance, and he was soon joined by another trooper and Officer Ford of the Sturbridge police department. Ford was accompanied by Max, a dog trained to sniff out and discover hidden narcotics. The dog sniffed out and the police removed from the springs underneath the front passenger seat, a sizeable amount of cocaine, primarily in brick form.

The motion judge ruled that the automobile in which the defendants were passengers was properly stopped for a defective license plate light. He further ruled that the "first baggie was in clear sight to [the trooper] as he sought licenses from the automobile's passengers." The judge concluded that "this gave [the trooper] probable cause to pursue a search of the Pontiac by himself and with the aid of the canine." Thereupon, the judge denied the suppression motions.

The defendants claim that the motion judge committed error in ruling that the trooper's observation of the baggie gave him probable cause to search the automobile. They argue that the warrantless search of the automobile and their subsequent arrest was in violation of the Fourth Amendment to the United States Constitution and, therefore, the Commonwealth did not meet "its burden of establishing that the actions of the police met constitutional standards." *Commonwealth* v. *Santaliz*, 413 Mass. 238, 240 (1992).

---

[4]The Commonwealth did not claim in regard to the searches of the jacket and the automobile that the trooper feared for his safety and was searching for weapons.

There is no dispute that the trooper had a valid reason (a defective plate light) for stopping the automobile. *Commonwealth* v. *Figueroa*, 18 Mass. App. Ct. 967 (1984). *Commonwealth* v. *Rivera*, 33 Mass. App. Ct. 311, 314 (1992). Further, the subsequent *observation* by the trooper of the baggie inside the automobile while standing outside did not constitute a search, and "Fourth Amendment limitations [were] not triggered." *Commonwealth* v. *Doulette*, 414 Mass. 653, 656 (1993).[5] See *Commonwealth* v. *Sergienko*, 399 Mass. 291, 294-295 (1987) (observation of an item in plain view "involves no intrusion into an area in which the defendant has a reasonable expectation of privacy" and does not rise to the level of a search). *Horton* v. *California*, 496 U.S. 128, 133 & n.5 (1990).

Our ruling that the initial observation of the baggie did not constitute a search does not end our analysis. After he had observed the object, the trooper opened the door and seized the bag. Although an *observation* of an item in plain view does not constitute a search, a *seizure* of an item in plain view, "intrudes upon the owner's possessory interest in that item and thus implicates constitutional considerations." *Commonwealth* v. *Figueroa*, 412 Mass. 745, 749 n.6 (1992). *Commonwealth* v. *Sergienko, supra* at 296. Also see *Texas* v. *Brown*, 460 U.S. 730, 738 n.4 (1983) (seizure of object in plain view "generally does implicate the [Fourth] Amendment's limitations upon seizures of personal property"). *Horton* v. *California, supra*. Therefore, "[a]bsent a finding of consent on the part of the defendant[s] permitting this action, this was a seizure requiring 'probable cause and a warrant or exigent circumstances justifying the lack of a warrant.'" *Commonwealth* v. *Sergienko, supra* at 296, quoting from *Commonwealth* v. *Ortiz*, 376 Mass. 349, 353 (1978). Here, the defendants argue that the trooper lacked probable cause for the seizure of the baggie from the interior of the automobile.

[5]The trooper's use of a flashlight to illuminate the interior of the vehicle does not constitute a search. *Commonwealth* v. *Doulette, supra* at 655.

Probable cause "merely requires that the facts available to the officer would 'warrant a man of reasonable caution in the belief', *Carroll* v. *United States*, 267 U.S. 132, 162 (1925)', that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false." *Texas* v. *Brown, supra* at 742.[6] Here, the trooper observed an apparently empty baggie on the floor of the automobile.[7] Such an item is "capable of use for a lawful as well as an unlawful purpose." *Commonwealth* v. *Rivera*, 27 Mass. App. Ct. 41, 43 n.3 (1989). If there is some characteristic of the particular baggie observed in plain view that indicates that it is being used for an unlawful purpose, that fact alone may be enough to justify seizure. *Ibid.* See *Texas* v. *Brown, supra* at 734 (officer noticed in plain view an opaque green party balloon, knotted about one-half inch from its tip in defendant's hand. Officer's experience was that narcotics frequently were packaged in balloons like the one in defendant's hand). Here, there was no evidence from the trooper that there was some characteristic of this baggie itself, that would have indicated it was being used for an illegal purpose.

Further, the trooper did not observe anything in the automobile or in the conduct of the occupants of the vehicle which, in conjunction with his observation of the baggie, would have supplied probable cause for the warrantless search. Contrast *Texas* v. *Brown, supra* (where the officer

---

[6]In *Coolidge* v. *New Hampshire*, 403 U.S. 443, 466 (1971), the plurality opinion stated that, in order for a seizure of an item in plain view to be proper, one of the requirements is that the incriminating nature of the item must be "immediately apparent."

In *Texas* v. *Brown, supra* at 741, the plurality opinion stated that "the phrase 'immediately apparent' [in Coolidge] was very likely an unhappy choice of words, since it can be taken to imply that an unduly high degree of certainty as to the incriminatory character of evidence is necessary for an application of the plain view doctrine . . . ." The opinion noted (at 742) that the words in *Coolidge* were intended to be merely a "statement of the rule . . . requiring probable cause for seizure in the ordinary case." See 3 LaFave, Search and Seizure 129 n.17 (1987).

[7]It is not disputed that it was after the trooper seized the baggie that he noticed the powder residue in it.

observed in plain view in addition to the knotted balloon sev- .
eral small plastic vials, quantities of loose white powder and
an open bag of party balloons); *Commonwealth* v. *Doulette,*
414 Mass. at 654 (where the officer observed in plain view a
razor blade, a 1" x 1 ½" paper wrapper, and a 3" x 5" mirror
with white powder protruding from under the front seat);
*Commonwealth* v. *Sabetti,* 411 Mass. 770, 772 (1992)
(where an officer observed in plain view several items in pas-
senger's open pocket, "including a brown plastic medicine
vial bearing the name 'Janet' on the label, a folded piece of
glossy paper, a section of a plastic straw, a small metal aspi-
rin tin, and a small amber vial which appeared to contain a
white powdery substance); and *Commonwealth* v. *Ortiz,* 376
Mass. 349, 353-354 (1978) (upon observing approaching po-
lice officers, defendant threw packet into automobile and re-
treated from scene; officers recognized the packet as being of
the type used to conceal heroin).

We recognize that a police officer may rely on his training
and experience to draw inferences and make deductions that
might well elude an untrained person. *Texas* v. *Brown,* 460
U.S. at 746. *Commonwealth* v. *Figueroa, supra* at 751.
*Commonwealth* v. *Santaliz,* 413 Mass. at 241. However, in
the circumstances present here, the trooper's experience, cou-
pled with his observation of an apparently empty baggie, is
not enough to provide probable cause to conduct a warrant-
less search of the automobile.[8] Benign objects such as spoons,
mirrors, and straws are often used in the narcotic trade. To
allow police officers, experienced in narcotics investigations,
to conduct a warrantless search whenever they observe one of
the above items, and nothing more, would permit random

---

[8]Indeed, the trooper testified that once he observed the apparently empty
baggie, he became suspicious, based on his experience and training.

Of course, the subsequent search demonstrated that his suspicion was
justified. However, "a search is not to be made legal by what it turns up,"
*United States* v. *DiRe,* 332 U.S. 581, 595 (1948). See also *Byars* v. *United
States,* 273 U.S. 28, 29 (1927), where the United States Supreme Court
stated, "A search prosecuted in violation of the Constitution is not made
lawful by what it brings to light; and the doctrine has never been recog-
nized by this Court, nor can it be tolerated under our Constitutional
system . . . ."

searches, which are condemned by the Fourth Amendment and the Declaration of Rights.

The defendants' suppression motions should have been allowed. Therefore, all evidence of the search of the automobile should have been suppressed including the searches subsequent to the seizure of the baggie. The orders denying the motions to suppress are vacated. Because it does not appear on this record that the Commonwealth will be able to make its proof without the suppressed evidence, we reverse the judgments, set aside the verdicts, and order the entry of judgments of not guilty of trafficking in cocaine and possession of cocaine. With respect to the conviction of possession of marihuana, we set aside the verdict and order the entry of judgment of not guilty.

*So ordered.*