Commonwealth *vs.* Sharon E. Dolby.

No. 99-P-489.

Berkshire. May 16, 2000. - December 1, 2000.

Present: Armstrong, C.J., Gillerman, & Rapoza, JJ.

*Practice, Criminal,* Motion to suppress. *Search and Seizure,* Automobile, Plain view, Probable cause.

A "bong" is "drug paraphernalia," as particularly described in G. L. c. 94C, 1(12)(l), and a State trooper, who after a lawful stop of a motor vehicle observed a bong with residue in plain view in the vehicle, had probable cause to seize it; and, after the trooper smelled the residue and observed its odor was like burnt marijuana, he also had probable cause to search the vehicle for controlled substances. [547-551]

Complaint received and sworn to in the Southern Berkshire Division of the District Court Department on October 6, 1998.

A motion to suppress evidence was heard by *Fredric D. Rutberg,* J.

*Joseph A. Pieropan,* Assistant District Attorney, for the Commonwealth.

*Karen M. Thursby* for the defendant.

Gillerman, J. On October 29, 1998, the defendant was arraigned in the Southern Berkshire District Court and charged with speeding, in violation of G. L. c. 90, § 17 (a civil infraction), and possession of a class D controlled substance (marijuana), in violation of G. L. c. 94C, § 34. On December 16, 1998, the defendant filed a motion to suppress evidence, claiming that "the evidence seized, to wit: marijuana, as a result of the unlawful search and seizure was obtained in violation of her [Federal and State constitutional] rights . . . ." After a hearing on her motion on January 7, 1999, the court allowed the motion and filed written findings. The Commonwealth filed a notice of appeal. On February 16, 1999, the Supreme Judicial Court granted the Commonwealth's application for

interlocutory appeal and transferred the case to the Appeals Court.

We take the facts from the judge's findings, which are sparse, and from testimony of the police officer, to "fill out the narrative." *Commonwealth* v. *Butler*, 423 Mass. 517, 526 n.10 (1996). On September 24, 1998, Mark Rogers, a Massachusetts State Trooper, was patrolling north on Route 7 in Stockbridge at approximately 12:00 noon. As he approached the intersection of Ice Glen Road and Route 7, Rogers noticed a minivan in the southbound lane about to make a left turn onto Ice Glen Road. Rogers, about to drive past the minivan, saw a red Toyota "pass the minivan on the right hand side in the breakdown lane." The Toyota was traveling at approximately fifty miles per hour in a thirty-five mile per hour zone. Believing this speed to be unreasonable, Rogers made a U-turn and followed the Toyota until it stopped just before the Great Barrington-Stockbridge line on Route 7.

The driver, the defendant, was the sole occupant of the vehicle. The driver handed her license and registration to Rogers as he approached her window. Rogers looked through the window of the car and saw what he knew to be a "bong,"[1] on the right rear passenger floor.[2] He observed that the bong (the chamber of which was made of clear plastic) had been used: there was extensive residue in the chamber. Rogers believed, the judge found, "that the residue had to be marijuana because bongs are used primarily for smoking marijuana." The judge characterized this belief as "merely a hunch."

The judge made no findings as to the subsequent events, but they appear to be undisputed, there being no challenge to Rogers's credibility. Having seen the bong with residue in the chamber, and believing the residue to be derived from marijuana, Rogers asked the defendant to get out of her vehicle, and he conducted a frisk of her outer clothing to search for

---

[1]A "bong" is a "water pipe that consists of a bottle or a vertical tube partially filled with liquid and a smaller tube ending in a bowl, used often in smoking narcotic substances." *Posters N' Things, Ltd.* v. *United States*, 511 U.S. 513, 515 n.1 (1994), quoting from American Heritage Dictionary 215 (3d ed. 1992).

[2]Looking into the defendant's vehicle and seeing the bong was not a search for constitutional purposes. See *Commonwealth* v. *Wilson*, 360 Mass. 557, 560 (1971).

weapons.[3] Finding no weapons, Rogers asked the defendant whether she owned the bong, and she replied that it did belong to her. The trooper then told the defendant to sit on the guardrail, a short distance from the front of her car.

The trooper seized the bong from inside the defendant's vehicle, smelled the interior of the bong, and determined that the smell was "consistent with what I recognize as burnt marijuana." Rogers then searched the entire vehicle for contraband. He recovered a silver box containing approximately twenty-five to thirty seeds, which he recognized to be marijuana plant seeds.

The judge allowed the motion to suppress. He reasoned that Rogers's training and experience may have influenced his hunch, but that that did "not take the place of 'articulable facts' which could have reasonably led Trooper Rogers to conclude that the residue was marijuana."[4] The judge concluded that "[b]ongs are bought, sold and possessed legally every day throughout the Commonwealth; and the mere possession of a bong does not rise to probable cause that any particular possessor of a bong is also in possession of marijuana." The judge entered an order suppressing the bong and the silver-colored metal box containing marijuana seeds.

*Discussion.* The defendant argues in her brief that the seizure of the bong and the ensuing search of her vehicle were illegal because of the absence of probable cause.

It was the Commonwealth's burden to show that the trooper, in seizing the bong and the marijuana seeds, acted on probable cause. *Sullivan* v. *District Court of Hampshire*, 384 Mass. 736, 743-744 (1981). "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Commonwealth* v. *Cast*, 407 Mass. 891, 895 (1990), quoting from *Draper* v. *United States*, 358 U.S. 307,

---

[3]The exit order has not been challenged on appeal.

[4]With regard to his training, Rogers had testified, "During my twenty-two weeks at the State police academy in Braintree, we were trained by officers from the Drug Enforcement Administration with respect to identification of marijuana and particular [items] used commonly with marijuana to smoke it. We were shown raw marijuana. We were also introduced to the smell of burnt marijuana. These agents brought . . . marijuana and they burned [it] in our classroom so that we [could] become familiar with the smell of burnt marijuana."

313 (1959). See also *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 689 (1984) ("Probable cause 'is a flexible, common-sense standard, [which] merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief" that certain items may be contraband . . . ; it does not demand any showing that such a belief be correct or more likely true than false' " [citations omitted]).

The defendant, now accepting the relevance of that portion of G. L. c. 94C, § 1, which defines "drug paraphernalia,"[5] argues that a bong is not illegal to possess "absent some indication that it has been or is intended to be used to ingest . . . drugs into the human body." She argues that there were no such indications when the trooper seized the defendant's bong. We do not agree.

General Laws c. 94C, § 1, defines the terms used in c. 94C, including the phrase "drug paraphernalia." "Drug paraphernalia" is defined (as appearing in St. 1998, c. 50) as including "all equipment, products, devices and materials of any kind which are primarily intended or designed for use in . . . inhaling . . . a controlled substance . . . . *It includes, but is not limited to*: . . . (12) *objects used*, primarily intended for use or designed for use in ingesting, inhaling, or otherwise introducing [a controlled substance] into the human body, *such as* . . . (l) bongs . . . ." (Emphases supplied.)

With the enactment of St. 1998, c. 50, approved March 12, 1998, rewriting the definition of "drug paraphernalia" in G. L. c. 94C, § 1, and effective three months prior to the events in this case,[6] bongs, for the first time, were included among the

---

[5]The parties in their original briefs to this court made no mention of G. L. c. 94C, § 1. Following oral argument we invited a supplemental memorandum from counsel regarding the applicability, vel non, to the evidence in this case of G. L. c. 94C, § 1(12)(l) (definition of "drug paraphernalia"), as appearing in St. 1998, c. 50, approved March 12, 1998 (three months prior to the events in this case). The 1998 amendment rewrote the definition of "drug paraphernalia," as discussed in the text.

The portion of § 1 defining "drug paraphernalia" appears, in full, in the appendix to this opinion.

[6]Given the fact that the parties, in their original briefs to this court, made no mention of G. L. c. 94C, § 1, see note 5, *supra*, we have no reason to believe that this statutory provision was brought to the attention of the trial judge.

items identified as objects used or designed for use in inhaling a controlled substance.[7]

After the reference to "bongs" and other identified items, § 1 continues: "In determining whether an object is drug paraphernalia, a court or other authority should consider, in addition to all other logically relevant factors, the following: . . . ." Then follows a list of eleven factors to be considered "[i]n determining whether an object is drug paraphernalia"; included in the list as a factor is "(c) the existence of any residue of controlled substances on the object."

The definition of "drug paraphernalia" in c. 94C, § 1, is not without its interpretive difficulties. It is not entirely clear, for example, whether the inclusion of "bongs" within the list of "objects used, primarily intended for use or designed for use in . . . inhaling [a controlled substance]" is alone sufficient to constitute bongs as "drug paraphernalia," or whether, as the defendant argues, the Commonwealth must also, in order to show that the object constitutes "drug paraphernalia," establish that the object is "primarily intended or designed for use in . . . inhaling or otherwise introducing into the human body a controlled substance," as set out in the first sentence of the definition of "drug paraphernalia."

The facts of the case before us resolve this difficulty. Here, the trooper saw a bong with residue in the chamber, and he reasonably believed that the residue was probably derived from marijuana.[8] These facts must be considered in the context of additional provisions appearing in § 1. Section 1 defines

---

[7]The definition of "drug paraphernalia" in the Federal act prohibiting the sale of, and the use of the mails or other interstate commerce to transport, drug paraphernalia, see 21 U.S.C. § 863(*d*)(12) (1994), also includes "bongs." General Laws c. 94C, inserted by St. 1971, c. 1071, § 1, and entitled the Controlled Substances Act, is based on the Uniform Controlled Substances Act, versions of which have been published in 1970, 1990, and 1994. Forty-eight States and the District of Columbia, Puerto Rico, and the Virgin Islands have adopted the Uniform Controlled Substances Act, in one version or another. The Uniform Act, however, does not define "drug paraphernalia."

[8]The judge's findings include the following: "The Court finds that Trooper Rogers' belief that the bong was used in connection with the smoking of marijuana and therefore probably contained marijuana residue was merely a hunch . . . . While the *trooper's training and experience may have influenced his hunch, it does not take the place of 'articulable facts' which could have reasonably led Trooper Rogers to conclude that the residue was marijuana*" (emphasis supplied). We give no weight to the judge's characterization of Rogers's belief as a "hunch." The "articulable facts" which the judge sought

"primarily intended for use" as "the likely use which may be ascribed to an item by a reasonable person" and provides that, "[f]or purposes of this definition, the phrase 'designed for use' shall mean the use a reasonable person would ascribe to an item based on the design and features of said item." Further, the definition of "drug paraphernalia" in § 1 provides that a court, in determining whether an object is drug paraphernalia, should consider "the existence of any residue of [a] controlled substance[] on the object . . . ."

The facts in the present case, in the context of the relevant statutory provisions, present a configuration that falls within prohibited territory: the sight, in plain view,[9] of a bong with residue in the chamber indicating prior use, and which the trooper reasonably believed, based on his training and experience, see note 4, *supra*, was marijuana residue. Rogers then had probable cause to connect the bong with criminal activity, i.e., knowing possession of a controlled substance. That connection to criminal activity was sufficient to justify Rogers's seizure of the bong. On the facts presented the seizure of the defendant's bong "involves no invasion of privacy and *is presumptively reasonable, assuming that there is probable cause to associate the property with criminal activity* (emphasis original).' " *Commonwealth* v. *Skea*, 18 Mass. App. Ct. 685, 689 (1984), quoting from *Texas* v. *Brown*, 460 U.S. 730, 741-742 (1983). See also *Sullivan* v. *District Court of Hampshire*, 384 Mass. at 743 ("Of course, for any warrantless seizure to meet Fourth Amendment standards there must be probable cause to believe that the item

---

were contained in Rogers's testimony: "As I could see this bong, it had extensive residue inside the chamber . . . . It's clear plastic and it had extensive residue inside the chamber. Based on my training and experience, it appeared consistent with a device used to smoke marijuana." The judge credited Rogers's testimony, and he accepted Rogers's background "training and experience." The judge credited facts that constituted "articulable facts" as matter of law. See, e.g., *Commonwealth* v. *Watson*, 430 Mass. 725, 733 (2000) ("Probable cause exists when the police have sufficient information to justify a reasonable person's belief that the defendant has committed or is committing a crime . . . . In determining whether the police think that the automobile contains contraband, they may rely on their own observations that take on 'special significance' to their 'trained' eyes" [citations omitted]).

[9]See *Commonwealth* v. *Santana*, 420 Mass. 205, 211 (1995), quoting from *Minnesota* v. *Dickerson*, 508 U.S. 366, 375 (1993) ("Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant").

seized is connected with criminal activity"); *Commonwealth* v. *Wojcik*, 358 Mass. 623, 628-631 (1971) (where articles seized were not contraband ["articles which it is unlawful for one to have in his possession"], the seizure of articles not described in the warrant would have been legal only if police officers knew or had probable cause to believe the articles had been stolen and the defendant knew them to be stolen).

Once the trooper seized the bong, he smelled the residue and confirmed his belief that the residue was derived from marijuana. He then had probable cause to search the defendant's vehicle "for the presence of other controlled substances." *Commonwealth* v. *Skea*, 18 Mass. App. Ct. at 688. See *Commonwealth* v. *Agosto*, 428 Mass. 31, 34 (1998) ("When there is probable cause to search an automobile stopped on a highway, an immediate search is constitutionally permissible"). There was no basis to suppress the marijuana seeds found in the defendant's vehicle.[10]

In sum, the sight of the bong with residue in the chamber — which Rogers reasonably believed was derived from marijuana — provided the trooper with probable cause to seize the bong. After the trooper smelled the residue and determined that it smelled like burnt marijuana, he had probable cause to search the vehicle.

We express no opinion as to whether the mere sight of a bong is sufficient for the item to be seized.[11] Possession of a bong, and no more, is not a crime in Massachusetts. But see G. L. c. 94C, § 32I: possession of drug paraphernalia with intent to sell, knowing, or under circumstances where one reasonably should know, that it will be used to introduce a controlled substance into the human body, is a crime. See *Commonwealth* v. *Jasmin*, 396 Mass. 653 (1986).

The order allowing the motion to suppress is reversed.

*So ordered.*

---

[10]Exigent circumstances as a precondition to a warrantless search are no longer required for an automobile stopped on a public place. *Commonwealth* v. *Motta*, 424 Mass. 117, 123-124 (1997).

[11]The process for the seizure of drug paraphernalia in forfeiture proceedings is governed by the provisions of G. L. c. 94C, § 47(f)(1). See *Commonwealth* v. *Agosto*, 428 Mass. at 35-36.

Commonwealth *v.* Dolby.

APPENDIX.

General Laws § 94C, § 1, provides in part (emphases supplied):

"Drug paraphernalia", all equipment, products, devices and materials of any kind which are *primarily intended or designed for use* in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body a controlled substance in violation of this chapter. It includes, but is not limited to:

(1) kits used, primarily intended for use or designed for use in planting, propagating, cultivating, growing or harvesting fo any species of plant which is a controlled substance or from which a controlled substance can be derived;

(2) kits used, primarily intended for use of designed for use in manufacturing, compounding, converting, producing, processing or preparing controlled substances;

(3) isomerization devices used, primarily intended for use or designed for use in increasing the potency of any species of plant which is a controlled substance;

(4) testing equipment used, primarily intended for use or designed for use in identifying or in analyzing the strength, effectiveness or purity of controlled substances;

(5) scales and balances used, primarily intended for use or designed for use in weighing or measuring controlled substances;

(6) diluents and adulterants, such as quinine hydrochloride, mannitol, mannite, dextrose and lactose, used, primarily intended for use or designed for use in cutting controlled substances;

(7) separation gins and sifters used, primarily intended for use or designed for use in removing twigs and seeds from or in otherwise cleaning or refining marihuana;

(8) blenders, bowls, containers, spoons and mixing devices used, primarily intended for use or designed for use in compounding controlled substances;

(9) capsules, balloons, envelopes and other containers used, primarily intended for use or designed for use in packaging small quantities of controlled substances;

(10) containers and other objects used, primarily intended for use or designed for use in storing or concealing controlled substances;

(11) hypodermic syringes, needles and other objects used, primarily intended for use or designed for use in parenterally injected controlled substances into the human body;

(12) *objects used,* primarily intended for use or designed for use *in ingesting, inhaling, or otherwise introducing marihuana,* cocaine, hashish or hashish oil into the human body, such as:

(a) metal, wooden, acrylic, glass, stone, plastic or ceramic pipes, which pipes may or may not have screens, permanent screens, hashish heads or punctured metal bowls;

(b) water pipes;

(c) carburetion tubes and devices;

(d) smoking and carburetion masks;

(e) roach clips; meaning objects used to hold burning material, such as a marihuana cigarette that has become too small or too short to be held in the hand;

(f) miniature cocaine spoons and cocaine vials;

(g) chamber pipes;

(h) carburetor pipes;

(i) electric pipes;

(j) air-driven pipes;

(k) chillums;

(l) *bongs*;

(m) ice pipes or chillers;

(n) wired cigarette papers;

(o) cocaine freebase kits.

*"In determining whether an object is drug paraphernalia, a court or other authority should consider,* in addition to all other logically relevant factors, the following:

(a) the proximity of the object, in time and space, to a direct violation of this chapter;

(b) the proximity of the object to controlled substances;

(c) *the existence of any residue of controlled substances on the object*;

(d) instructions, oral or written, provided with the object concerning its use;

(e) descriptive materials accompanying the object which explain or depict its use;

(f) national and local advertising concerning its use;

(g) the manner in which the object is displayed for sale;

(h) whether the owner, or anyone in control of the object, is a supplier of like or related items to the community, such as a licensed distributor or dealer of tobacco products;

(i) direct or circumstantial evidence of the ratio of sales of the object to the total sales of the business enterprise;

(j) the existence and scope of legitimate uses for the object in the community;

(k) expert testimony concerning its use.

*"For purposes of this definition, the phrase "primarily intended for use" shall mean the likely use which may be ascribed to an item by a reasonable person. For purposes of this definition, the phrase "designed for use" shall mean the use a reasonable person would ascribe to an item based on the design and features of said item."*