NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-389                                          Appeals Court

COMMONWEALTH  vs.  EDDIE TORRES.

No. 22-P-389.

Franklin.    November 7, 2022. – March 6, 2023.

Present:  Massing, Singh, & Hershfang, JJ.

Controlled Substances.  Search and Seizure, Motor vehicle, Plain
    view, Probable cause.  Probable Cause.  Constitutional Law,
    Probable cause, Search and seizure.  Practice, Criminal,
    Motion to suppress.

Indictments found and returned in the Superior Court
Department on December 20, 2019.

A pretrial motion to suppress evidence was heard by Francis
E. Flannery, J.

An application for leave to prosecute an interlocutory
appeal was allowed by Delila Argaez Wendlandt, J., in the
Supreme Judicial Court for the county of Suffolk, and the appeal
was reported by her to the Appeals Court.

Cynthia M. Von Flatern, Assistant District Attorney, for the
Commonwealth.
Esther J. Horwich for the defendant.

SINGH, J.  The question presented by this appeal is whether

a State trooper's plain view observation of a used "crack" pipe

in a motor vehicle provides probable cause for a warrantless search of the entire vehicle for contraband drugs. Concluding that it does, we reverse the order of the Superior Court judge suppressing evidence of drugs found in a vehicle in which the defendant was traveling as a back seat passenger.[1]

Background. "We present the facts as found by the motion judge, supplemented by uncontroverted facts from the record that have been 'explicitly or implicitly credited' by the motion judge."[2] Commonwealth v. Torres-Pagan, 484 Mass. 34, 35 (2020), quoting Commonwealth v. Jones-Pannell, 472 Mass. 429, 431 (2015).

In the early morning hours of September 5, 2019, Massachusetts State Police Troopers Michael Leslie and Benjamin Poirier were traveling north on Interstate 91 near Bernardston in a marked police cruiser. At about 3:23 A.M., they observed a sedan cross over the rumble strip near exit 50A (then known as

---

[1] The defendant is charged with trafficking in ten grams or more of fentanyl, G. L. c. 94C, § 32E (c 1/2); trafficking in thirty-six grams or more, but less than one hundred grams, of cocaine, G. L. c. 94C, § 32E (b) (2); and conspiracy to violate drug laws, G. L. c. 94C, § 40. Following an evidentiary hearing, a Superior Court judge allowed the defendant's pretrial motion to suppress the narcotics. A single justice of the Supreme Judicial Court allowed the Commonwealth's application for interlocutory appeal and referred the matter to this court.

[2] The judge explicitly found the testimony of both troopers, who testified on behalf of the Commonwealth at the suppression hearing, to be "entirely credible."

exit 28A) into a prohibited travel area.  When they ran a check of the vehicle's license plate number, the troopers learned that the registered owner of the vehicle had a suspended Vermont driver's license.  The troopers maneuvered their cruiser behind the vehicle and activated the cruiser's blue lights to initiate a traffic stop; the vehicle pulled over without incident.  As they were coming to a stop in the breakdown lane, Trooper Leslie observed the defendant, a back seat passenger, through the vehicle's rear window:  the defendant sat up, as if he had just been lying down, looked out the back window toward the cruiser, and then ducked down again.  Trooper Leslie recognized him.

Trooper Leslie approached the vehicle on the driver's side, while Trooper Poirier approached on the passenger's side.  The vehicle contained three occupants:  the driver, the front seat passenger, and the defendant.  When he approached the vehicle, Trooper Poirier observed that the defendant was not wearing a seatbelt, prompting the trooper to ask the defendant for his identification.  The defendant refused this request.

Meanwhile, after identifying the driver as the registered owner of the vehicle, Trooper Leslie ordered him out of the vehicle to arrest him for driving with a suspended license.  As

the driver stepped out, Trooper Leslie observed a "used crack pipe" on the floor board near the driver's left leg.[3]

Trooper Leslie proceeded to handcuff the driver and place him in the back seat of a cruiser.  After providing the driver with his Miranda rights, Trooper Leslie asked him for the defendant's name.  The driver responded that the defendant's name was "Troy."  Trooper Leslie had dealt with the defendant before, and although he could not recall the defendant's name at the time, he knew that the provided name was false.[4]  Trooper Leslie next asked the driver if there was anything illegal or of substantial value in the vehicle; the driver stated that there were no drugs in the vehicle.

Following Trooper Leslie's discovery of the used crack pipe, the defendant and front seat passenger were removed from the vehicle and detained so the vehicle could be searched.

---

[3] Trooper Leslie testified that the crack pipe was "a glass hollow tube with burnt Brillo on the end, and [it was] charred like a black char around the end."  Based on his training and experience, Trooper Leslie was familiar with the appearance of crack pipes and knew how they were used.  He also had previously seized crack pipes and crack cocaine during his tenure in law enforcement.

[4] The judge found that "by this point[, Trooper Leslie] recalled the defendant from a prior drug arrest."  The defendant contends that the evidence was to the contrary, i.e., that Trooper Leslie did not recall the context of his earlier interaction with the defendant until after the defendant was already detained.  We need not decide whether the judge's finding as to this point is clearly erroneous, because we do not consider it in our calculus.

During the search, the troopers discovered a large quantity of heroin, cocaine, and fentanyl in the area where the defendant had been sitting in the back seat.

Discussion.  "In reviewing a decision on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error but conduct an independent review of [his] ultimate findings and conclusions of law" (citation omitted). Commonwealth v. Rosario-Santiago, 96 Mass. App. Ct. 166, 171 (2019).  "The Commonwealth bears the burden of demonstrating that the actions of the police officers were within constitutional limits."  Commonwealth v. Meneus, 476 Mass. 231, 234 (2017).

"Under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, warrantless searches 'are per se unreasonable -- subject only to a few specifically established and well-delineated exceptions'" (citation omitted).  Commonwealth v. Dame, 473 Mass. 524, 536, cert. denied, 580 U.S. 857 (2016).  One of those is the automobile exception.  Id.  "Due to the inherent mobility of an automobile, and the owner's reduced expectation of privacy when stopped on a public road, police are permitted to search a vehicle based upon probable cause to believe that it contains evidence of a crime."  Commonwealth v. Davis, 481 Mass. 210, 220 (2019).  The question we therefore consider here is "whether the

police, prior to the commencement of [the] warrantless search, had probable cause to believe that they would find the instrumentality of a crime or evidence pertaining to a crime in the vehicle" (citation omitted).  Id.

"Probable cause exists when 'the facts and circumstances within the officer's knowledge at the time of making the search . . . were sufficient to warrant a prudent [person] in believing' that a location contained evidence or contraband" (citation omitted).  Commonwealth v. Gouse, 461 Mass. 787, 792 (2012).  "In dealing with probable cause, . . . as the very name implies, we deal with probabilities.  These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act" (citation omitted).  Id. at 794.  The probable cause inquiry is "not a high bar" (citation omitted), Commonwealth v. Guastucci, 486 Mass. 22, 26 (2020), and "does not require a showing that evidence more likely than not will be found" (citation omitted), Commonwealth v. Diaz-Arias, 98 Mass. App. Ct. 504, 508 (2020).

The Commonwealth argues that the defendant's motion to suppress should have been denied because Trooper Leslie's observation of a used crack pipe on the floor board of the vehicle established probable cause to search for further evidence of a crime.  The defendant counters that both the

seizure of the crack pipe and the subsequent warrantless search of the vehicle were unlawful because possession of a crack pipe is not illegal, and its presence did not justify a search for contraband. We address each issue in turn.

1. Seizure of the crack pipe. "Under [the plain view] doctrine, if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Commonwealth v. Perkins, 465 Mass. 600, 603-604 (2013), quoting Minnesota v. Dickerson, 508 U.S. 366, 375 (1993). The plain view doctrine applies under art. 14 of the Massachusetts Declaration of Rights where police come across the object inadvertently. Perkins, supra at 604.

Here, Trooper Leslie inadvertently observed the crack pipe in plain view as the driver stepped out of the vehicle following a lawful exit order. Based on his training and experience, Trooper Leslie believed that the crack pipe, which was charred and had burnt Brillo on the end, had been used. While the possession of drug paraphernalia such as a crack pipe is not, in and of itself, a crime,[5] see G. L. c. 94C, § 32I, a reasonable

---

[5] The parties do not dispute that a crack pipe fits within the definition of "drug paraphernalia" under G. L. c. 94C, § 1.

officer could infer that the used crack pipe was intended to be, and had been, used to smoke crack cocaine,[6] any amount of which is illegal to possess.  See G. L. c. 94C, §§ 31, 34.  It was apparent then that the pipe was an instrumentality of crime. See Commonwealth v. Tyree, 455 Mass. 676, 694 (2010) ("In the case of contraband and fruits and instrumentalities of crime, the nexus to criminal activity is obvious" [citation omitted]). It follows, as found by the motion judge, that "there was probable cause to associate [the pipe] with criminal activity" and its seizure was justified.  See Commonwealth v. Garcia, 34 Mass. App. Ct. 645, 650 (1993) ("If there is some characteristic of the particular baggie observed in plain view that indicates that it is being used for an unlawful purpose, that fact alone may be enough to justify seizure").

   2.  Search of the vehicle.  We next consider whether Trooper Leslie's discovery of the used crack pipe on the

---

   [6] On appeal, the defendant suggests that the crack pipe could have been used to smoke legal substances.  This argument was not raised below, nor was there any evidence adduced at the suppression hearing that the item seized had any lawful purpose. Indeed, the judge made a finding, crediting the trooper's testimony (based on his training and experience), that the seized item was a used crack pipe.  In any event, "[i]nnocent explanations . . . do not vitiate the existence of probable cause where there is a reasonable probability that criminal activity is afoot."  Commonwealth v. Wallace, 22 Mass. App. Ct. 247, 250 (1986).  See Diaz-Arias, 98 Mass. App. Ct. at 510 ("While one might imagine an innocent explanation for the observed behavior, one does not have to indulge the innocent explanations in evaluating probable cause").

floorboard in the driver's area furnished probable cause to search the vehicle for additional evidence or contraband.

An officer's mere observation of a benign object often associated with drug use or distribution generally will not supply probable cause to search.  See Garcia, 34 Mass. App. Ct. at 650-652.  A crack pipe, however, falls squarely outside this class of objects, as it is primarily used for an illegal purpose:  smoking crack cocaine.[7]  This distinguishes it from other items that have lawful applications but may also be -- or used in close connection with -- contraband in other circumstances.  Cf. Commonwealth v. Landry, 438 Mass. 206, 210-211 (2002) (hypodermic needle); Commonwealth v. Couture, 407 Mass. 178, 180-181, cert. denied, 498 U.S. 951 (1990) (handgun); Commonwealth v. Toole, 389 Mass. 159, 163 (1983) (empty gun holster and ammunition); Garcia, supra (glassine baggie).

The defendant argues, as the motion judge found here, that because there was no additional evidence suggesting that drugs were in the vehicle, such as "some perceptible amount of crack

---

[7] We have recognized that "although something may, in fact, be perfectly innocent or legal it may, depending on the circumstances, still establish reasonable suspicion or probable cause to believe that a crime has been, will be, or is being committed."  Commonwealth v. Locke, 89 Mass. App. Ct. 497, 505 n.11 (2016).

cocaine"[8] or signs of recent use, the presence of the used crack pipe did not give rise to probable cause. In support of this claim, the defendant points us to decisions from Massachusetts and other jurisdictions where at least one of these factors was present. But "[t]he issue is not the comparative strength of the evidence [to other like cases], but whether the evidence here was sufficient to support a finding of probable cause." Commonwealth v. Gentile, 437 Mass. 569, 576 (2002). We conclude that it was.

Here, prior to the search of the vehicle, Trooper Leslie and Trooper Poirier had probable cause to believe that a crime had been committed (possession of crack cocaine) and that evidence of that crime would be found in the vehicle. The most reasonable inference on this record is that the crack pipe had been used to smoke crack cocaine. The crack pipe's location in the vehicle, on the floor board near the foot of the driver and registered owner, also established a sufficient nexus between

---

[8] The judge determined that the evidence did not permit him to make an inference that the crack pipe contained any contraband drugs. Although there was no explicit testimony concerning the presence or absence of drugs or drug residue on the pipe, the judge credited the description of it as "used" with "burnt Brillo" and "black char" at one end. Because our analysis does not turn on it, we need not decide whether the evidence permitted an inference that the used crack pipe contained at least a trace amount of crack residue. See Black's Law Dictionary 1503 (10th ed. 2014) ("residue" is "[s]omething that is left over after a part is removed or disposed of").

the vehicle and this suspected criminal activity.  See

Commonwealth v. Ierardi, 17 Mass. App. Ct. 297, 300 (1983)

("When the police discovered cartridges in the pocket of the

defendant's trousers, immediately after his removal from the car

which he owned and had been driving, they could reasonably

believe that a search of the car would reveal a gun").  Cf.

Commonwealth v. Alvarado, 420 Mass. 542, 555 (1995) (no nexus

between cocaine found on passenger's person and automobile

itself).  Given a used crack pipe's inherent connection to

criminal activity, Trooper Leslie's observation of the used

crack pipe in plain view on the floor of the vehicle raised a

fair probability that crack cocaine would be found therein.  Cf.

Toole, 389 Mass. at 163-164 (empty holster and ammunition did

not establish probable cause that illegal gun was in vehicle).

We disagree with the motion judge's conclusion that an

officer's observation of certain drug paraphernalia, absent some

visible amount of contraband drugs or signs of recent

consumption, cannot supply probable cause to search a vehicle

for illegal drugs.  While at least one of these factors is often

present in cases like the one at bar, there is no per se rule

requiring such evidence under our jurisprudence on probable

cause.  Rather, our case law suggests that the absence of an

observable amount of contraband drugs is not determinative.  See

Gentile, 437 Mass. at 576 (defendant's admission to smoking

marijuana previous day and statement that truck contained "pot pipe" furnished probable cause to search truck for evidence of marijuana possession).  Nor is the absence of evidence indicating recent use, as demonstrated by our decision in Commonwealth v. Dolby, 50 Mass. App. Ct. 545, 550-551 (2000).

In Dolby, we held that an officer's plain view observation of a "bong" containing marijuana residue, within a motor vehicle, established probable cause to search the vehicle for additional contraband.  Dolby, 50 Mass. App. Ct. at 550-551. There was no indication in that case that the bong was recently used.  The only material distinguishing factor between the facts in Dolby and the instant case is the observable drug residue within the paraphernalia.  See id. at 546-547.  In assessing whether there is a reasonable belief that a vehicle contains evidence of a crime, the inference to be drawn from the presence of a crack pipe containing visible crack residue is essentially the same as a crack pipe without such residue that shows other clear signs of prior use.  See id. at 550 (noting significance of residue in chamber as "indicating prior use").

Moreover, to require particular evidence to be present to establish probable cause in these circumstances would ignore the fact that "no two cases are precisely alike," see Commonwealth v. Rivera, 27 Mass. App. Ct. 41, 44 (1989), and that probable cause "is 'a fluid concept' that is 'not readily, or even

usefully, reduced to a neat set of legal rules,'"[9] District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018), quoting Illinois v. Gates, 462 U.S. 213, 232 (1983). Indeed, the "'ultimate touchstone' of both the Fourth Amendment [to the United States Constitution] and art. 14 [of the Massachusetts Declaration of Rights] is reasonableness" (citation omitted). Commonwealth v. Overmyer, 469 Mass. 16, 20 (2014). While "[i]t is unreasonable for the police to spend time conducting warrantless searches for contraband when no specific facts suggest criminality," that is not what took place here (citation omitted). Id. Rather, the discovery of the used crack pipe in the vehicle was evidence that a crime had likely occurred.[10]

Applying the reasonable inferences drawn from Trooper Leslie's plain view observation of a used crack pipe to the flexible, commonsense probable cause standard, we conclude that a reasonable officer would be warranted in believing that contraband would be found inside the vehicle. Because the

---

[9] The Supreme Judicial Court has resisted the imposition of a categorical rule stating that one piece of evidence is essential to a finding of probable cause in a particular context. See Commonwealth v. Kennedy, 426 Mass. 703, 710-711 (1998).

[10] Further specific facts suggesting criminality include the defendant popping up in the back seat to look at the police and then ducking back down, the defendant refusing to provide identification, and the driver giving a false name for the defendant.

warrantless search of the vehicle was supported by probable cause, the defendant's motion to suppress should have been denied.

<u>Order allowing motion to
suppress reversed</u>.
