COMMONWEALTH *vs.* JOSE BERNADINO DESOUZA.

Bristol. October 6, 1998. - January 15, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, FRIED, & MARSHALL, JJ.

*Evidence,* Admissions and confessions, Videotape, Photograph, Judicial discretion. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Waiver. Practice, Criminal,* Voluntariness of confession, Capital case.

Evidence at the trial of murder indictments fully warranted the judge's conclusion that the Commonwealth had met its burden of proving beyond a reasonable doubt that the defendant's statements to police were voluntary and made after a valid waiver of his Miranda rights. [668-669]

At the trial of murder indictments, photographs and a videotape of the crime scene, including pictures of both victims, were properly admitted in the judge's discretion. [670]

INDICTMENTS found and returned in the Superior Court Department on April 10, 1991.

A motion to suppress evidence was heard by *Walter E. Steele,* J., and the cases were tried before *Gerald F. O'Neill, Jr.,* J.

*Mary F. Costello* for the defendant.

*David Keighley,* Assistant District Attorney, for the Commonwealth.

WILKINS, C.J. On March 31, 1991, in an apartment in New Bedford, the defendant shot and killed both Zelia Dutra Goulart, his girl friend and the mother of his young son, and her mother, Maria Dutra. He also shot and seriously wounded Alvarina Dutra, Zelia's sister. A jury found the defendant guilty of murder in the first degree of each woman that he killed, guilty of armed assault with intent to murder Alvarina Dutra, and guilty of the unlawful carrying of a dangerous weapon.

The evidence was overwhelming that the defendant committed the crimes of which he was convicted. That evidence included confessions that the defendant made to the police after he turned himself in at the New Bedford police headquarters approximately one hour after the shootings. He first admitted to

the shootings in an interview in which a police officer fluent in Portuguese acted as an interpreter. Immediately thereafter the police videotaped a second confession, using the same interpreter. We affirm the convictions.

1. The defendant challenges the denial by a Superior Court judge of his motion to suppress his confessions to the police. He asserts that the judge erred in ruling (a) that he made the confessions voluntarily and (b) that he was given adequate Miranda warnings and voluntarily waived his Miranda rights. We conclude that the judge did not err in deciding the separate issues of the voluntariness of the defendant's statements and the voluntariness of his waiver of Miranda rights. See *Commonwealth* v. *Edwards*, 420 Mass. 666, 673 (1995).

The defendant argues that the title of the form that the police used for advising him of his Miranda rights — "WARNING OF RIGHTS AND WAIVER OF RIGHTS - PORTUGUESE" — was only in English. He claims further that his judgment was impaired because of his physical and mental condition. Finally, he argues that the presence of an assistant district attorney at his videotaped interrogation may have misled him into believing that the assistant district attorney was acting to protect his rights.

We summarize the motion judge's findings of fact bearing on these claims and supplement them with our observations. The defendant entered the police station of his own volition, walked up to the desk officers, and asked if any of them spoke Portuguese. When they answered that they did not, he removed a gun from his waistband and handed it over to the officers. By this time, detectives were at the scene of the shootings, and the officers in the station suspected the defendant might have been involved. They took him upstairs in the station and waited for the arrival of a detective and of a sergeant who spoke Portuguese.

Prior to any questioning, the sergeant read the defendant his Miranda rights in Portuguese. When asked if he understood each of these rights, he replied in the affirmative and stated that he wished to waive them and speak with the police. The defendant then received a written copy of his Miranda rights in Portuguese and read them. After doing so, he signed the waiver form and again stated that he understood his rights, wished to waive them, and wanted to talk to the police. All the elements of a proper Miranda warning appeared on the waiver form in

Portuguese. The fact that there was writing in English on a form that adequately contained Miranda warnings in Portuguese does not impair the process or vitiate the waiver of rights. Contrast *Commonwealth* v. *Ayala*, 29 Mass. App. Ct. 592, 597 (1990) (police omitted from incomplete Miranda warnings that any statement that defendant made could be used against him).

Only the detective and the sergeant were present at the initial questioning. Prior to asking the defendant about the shootings, the detective asked him if he had been drinking that morning. The detective also asked the defendant background questions to determine if the defendant was lucid enough to make a statement. Once the detective was convinced of the defendant's ability to give a statement, the detective through the sergeant questioned him about the shootings. The defendant confessed to the shootings.

After the questioning was completed, the defendant agreed to repeat his statements for recording on videotape. Present during the videotaping were the interpreter, the detective, another detective who operated the camera, and an assistant district attorney. The assistant district attorney at no time spoke directly to the defendant. At one point he instructed the detective to ask the defendant if he wished to continue the interview. The defendant again confessed to the shootings.

The judge made fully warranted findings that the defendant was not affected by the consumption of alcohol or lack of sleep. We commend the police for conducting the videotaped interview which fully supports the judge's conclusions. The judge rejected the defendant's testimony and credited police testimony that the defendant was not under the influence of alcohol or otherwise impaired.

There was no evidence of coercion, deception, improper questioning, or deprivation of physical necessities. At the end of the interview, the defendant even thanked the officers for the way in which they had treated him. There is no basis for concluding that the defendant believed that the assistant district attorney was acting on behalf of the defendant. He was introduced to the defendant as the State's attorney. The facts fully warranted the judge's conclusion that the Commonwealth had met its burden by proving voluntariness and a waiver of Miranda rights beyond a reasonable doubt. See *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986); *Commonwealth* v. *Garcia*, 379 Mass. 422, 428 (1980).

2. The defendant objects to the admission of photographs and a videotape of the crime scene. The photographs show blood stains and human tissue on a wall and staircase railing and show the deceased victims lying on the floor of separate apartment rooms. The videotape consists of a tour of the apartment and shows the location of shell casings, the splattered blood and human tissue, and the deceased victims. In the arena of murder cases, the pictorial representations are not particularly gruesome or inflammatory. They show the place where the victims were shot, tended to confirm the surviving victim's and other witnesses' testimony, and tended to show inconsistencies in the defendant's statements to the police.

The question whether the inflammatory quality of a photograph outweighs its probative value and precludes its admission is determined in the sound discretion of the trial judge. See *Commonwealth* v. *Berry*, 420 Mass. 95, 108 (1995); *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990); *Commonwealth* v. *Repoza*, 382 Mass. 119, 129 (1980), *S.C.*, 400 Mass. 516, cert. denied, 484 U.S. 935 (1987); *Commonwealth* v. *Bys*, 370 Mass. 350, 361 (1976). The fact that a photograph is cumulative of other evidence has not required the exclusion of the photograph. See *Commonwealth* v. *Campbell*, 375 Mass. 308, 313 (1978); *Commonwealth* v. *Bys, supra* at 359-360. Even if a defendant agrees to stipulate to the facts that an offered photograph tends to prove, it is generally not error to admit it. *Commonwealth* v. *Nadworny*, 396 Mass. 342, 367 (1985), cert. denied, 477 U.S. 904 (1986). This court has almost never ruled that it was error to admit photographs of crime scenes and homicide victims. But see *Commonwealth* v. *Richmond*, 371 Mass. 563, 565 (1976) (error to admit photographs of victim's head partially eaten away by dogs). Cf. *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 (1980) (commenting on special limitation of admissibility of photograph where body has been altered in course of autopsy). A judge may appropriately attempt to mitigate the potentially prejudicial nature of a photograph by instructing the jury that the photograph is to be used in analyzing the evidence and is not designed to elicit sympathy. See *Commonwealth* v. *Lawrence*, 404 Mass. 378, 390 (1989); *Commonwealth* v. *Richenburg*, 401 Mass. 663, 673 (1988).[1]

3. We have considered the record and the defendant's argu-

---

[1]In this case the judge told the jurors that the photographs were not pleasant but not particularly gruesome and that they depicted what a witness said that

ments and conclude that there is no basis for granting him relief under G. L. c. 278, § 33E.

*Judgments affirmed.*

he saw, facts which could be competent and relevant to the jury's deliberations.