## COMMONWEALTH *vs.* DAMIAN GOUSE.

Bristol. December 6, 2011. - April 10, 2012.

Present: IRELAND, C.J., SPINA, CORDY, BOTSFORD, GANTS, DUFFLY, & LENK, JJ.

*Assault and Battery. Assault and Battery by Means of a Dangerous Weapon. Firearms. Constitutional Law,* Search and seizure, Right to bear arms. *Search and Seizure,* Automobile, Inventory, Probable cause. *Probable Cause. Evidence,* Firearm, Constructive possession, Photograph. *Practice, Criminal,* Motion to suppress, Instructions to jury. *License.*

A Superior Court judge properly denied the criminal defendant's pretrial motion to suppress a firearm found by police officers in the trunk of an automobile in which the defendant was a passenger at the time of his arrest, where the search of the vehicle was justified by the automobile exception to the warrant requirement, in that three individuals (a bystander whom the defendant had threatened, the father of the victim of an assault by the defendant, and an anonymous informant) had warned the police that the defendant was likely armed and the firearm was not found on the defendant's person. [792-794]

At the trial of indictments charging, inter alia, unlawful possession of a firearm, the evidence amply supported the conclusion that the defendant knew that the black bag in which the firearm was discovered by police contained a firearm, that he exercised dominion and control over the bag when he brought it out of an apartment, and that he continued to maintain the ability to control the bag even after it was placed into the trunk of an automobile in which he was a passenger. [794-796]

At the trial of indictments charging, inter alia, assault and battery and assault and battery by means of a dangerous weapon (a shod foot), the judge did not abuse his discretion in admitting in evidence a photograph of the victim's injuries, where witnesses used the photograph to illustrate and corroborate their testimony; further, the defendant failed to demonstrate abuse of discretion or prejudice arising from the display of the photograph allegedly for longer than necessary, and the judge did not err in declining to repeat a limiting instruction regarding the use of the photograph that the judge had given on three separate occasions. [796-798]

At a criminal trial, no substantial risk of a miscarriage of justice arose from the judge's instruction on the distinction between the separate acts supporting indictments charging assault and battery and assault and battery by means of a dangerous weapon (a shod foot), where, although the judge did not use the exact words "separate and distinct act," he made perfectly clear that the two indictments were based on separate acts. [798-799]

The criminal defendant's convictions of unlawful possession of a firearm, and of being a subsequent offender, did not implicate his constitutionally

protected right to possess a firearm in the home for purposes of self-defense, where the defendant was convicted of possessing a firearm in an automobile, and there was no evidence or suggestion that the firearm was possessed for the purpose of defending the defendant's home [799-802]; further, the allocation of burdens under G. L. c. 278, § 7, did not violate the due process guarantees of the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, in that it was entirely appropriate to require the defendant to produce some evidence that he was licensed to carry a firearm in order to raise it as an issue at trial, while maintaining the ultimate burden of disproving a properly raised affirmative defense on the prosecution [802-808].

INDICTMENTS found and returned in the Superior Court Department on February 28, 2008.

A pretrial motion to suppress evidence was heard by *Robert J. Kane*, J., and the cases were tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Sharon Dehmand* for the defendant.

*Shoshana E. Stern*, Assistant District Attorney, for the Commonwealth.

CORDY, J. On January 19, 2008, the defendant got out of the automobile he was driving; attacked his former girl friend, striking her with his fists; followed her down the street; and kicked her in the back. The police apprehended him later that afternoon and retrieved a firearm from the trunk of the automobile. After a two-day hearing, the defendant's motion to suppress the firearm was denied. A jury convicted the defendant of assault and battery (with his fists), in violation of G. L. c. 265, § 13A; assault and battery by means of a dangerous weapon (shod foot), in violation of G. L. c. 265, § 15A (*b*); and the unlawful possession of a firearm outside of his residence or place of business, in violation of G. L. c. 269, § 10 (*a*).[1] In the subsequent offender proceeding, the jury found the defendant guilty of unlawful possession of a firearm having previously been convicted of a violent crime, in violation of G. L. c. 269, § 10G (*a*). The defendant appealed, and we transferred the case to this court on our own motion.

---

[1] The jury also convicted the defendant of unauthorized use of a motor vehicle, G. L. c. 90, § 24 (2) (*a*), and acquitted him of unlawful possession of ammunition, G. L. c. 269, § 10 (*h*).

In challenging his convictions, the defendant renews three objections raised below and raises two for the first time on appeal. First, the defendant argues that the firearm should have been suppressed because there was neither probable cause that a firearm would be found in the vehicle nor grounds for conducting an inventory search. Second, he argues that the evidence was insufficient to prove that he constructively possessed the firearm. Third, with respect to the assault and battery convictions, the defendant contends that the judge improperly permitted the jury to view a photograph of the victim's facial injuries.

For the first time on appeal, the defendant claims that the judge failed to clarify in his instructions that the charges of assault and battery and assault and battery by means of a dangerous weapon must be supported by separate and distinct acts, and, as a result, the jury might have convicted the defendant on both charges based on a single striking. He also claims that his convictions of the unlawful possession of a firearm and of being a subsequent offender violated Federal and State due process guarantees and infringed on his right under the Second Amendment to the United States Constitution to keep and bear arms because the Commonwealth was not required to prove the absence of a license to carry the firearm as an element of the crime charged.[2]

We reject the defendant's arguments regarding the firearm and subsequent offender convictions, and discern no merit in the defendant's remaining claims. We therefore affirm the jury's verdicts at the trial and subsequent offender proceeding.

1. *Background.* We recite the largely undisputed facts presented at the suppression hearing. In the margin, we note additional evidence presented at trial pertinent to the defendant's challenge to the sufficiency of the evidence that he was in possession of the firearm.

Shortly after 4 P.M., on January 19, 2008, the defendant attacked the victim near the intersection of Pleasant Street and Choate Street in Fall River. Sergeant Gregory Bell of the Fall River police department quickly arrived on the scene, joined shortly thereafter by Officer Peter DaLuz.

The victim told Officer DaLuz that she had been walking on

---

[2]The defendant in *Commonwealth* v. *Eberhart, post* 809, 813-814 (2012), makes this same argument.

Pleasant Street when the defendant, driving a blue automobile, approached her and asked her to get inside. When the victim refused, the defendant got out of the vehicle and yelled at her. The victim ran away, but the defendant chased her, caught up with her, and punched her in the face. The victim struggled free and ran to the corner of Pleasant and Choate Streets where the defendant again caught up with her, this time knocking her to the ground and kicking her in the back with his (shod) foot. Officer DaLuz photographed the victim's injuries before she was taken away in an ambulance. Those injuries included a large egg-shaped bump above one of her eyes and a laceration. Blood was flowing from her eye, nose, and mouth.

Two individuals present at the scene alerted the police officers that the defendant might be armed. A bystander and witness to the assault, David Silvia, told Officer DaLuz that on observing the defendant kicking the victim, he ran to the corner and shouted at him to stop. In response, the defendant told Silvia to mind his own business and threatened to shoot him if he did not.[3] The defendant then drove away. The victim's father, who arrived at the scene right after the assault, told Sergeant Bell that the defendant "usually carried weapons." In addition, Officer DaLuz was familiar with the defendant from investigations into several domestic complaints and a shooting at a public housing complex in which the defendant had been a suspect.[4] This information was broadcast to other officers during the course of the investigation. Two other residents of Choate Street witnessed and confirmed the victim's account of the assault. They also provided the police officers with the make, model, and registration number of a blue Saturn automobile that the defendant was driving. The automobile was registered to a female resident of unit 17B of the Pleasant View housing complex in Fall River (unit 17B).

Detectives John Cabral, David Pacheco, and William Falandys were in plain clothes and drove an unmarked vehicle to the Pleasant View housing complex in search of the defendant.

[3]Silvia elaborated at trial that the defendant threatened, "Don't come any closer or I'll cap you." Silvia also testified that he had consumed five or six beers between 1:30 P.M. and 4 P.M. that afternoon, but that he was "[a]bsolutely not" intoxicated.

[4]Neither the victim's father's statement nor any information concerning prior investigations of the defendant was presented at trial.

Detective Cabral had, two days previously, received information from an anonymous informant that the defendant, who had recently been released from prison, had been armed with a firearm and was dealing "crack" cocaine in Providence, Rhode Island.[5] Shortly after 4:30 P.M., the Saturn was spotted parked unoccupied in front of unit 17B. Cabral, Pacheco, and Falandys took up a surveillance position. A few minutes later, two females came out of the unit and turned their heads back and forth as if they were looking for somebody. One of the females then opened the trunk of the Saturn. The defendant next emerged from the unit carrying a dark bag.[6] The defendant brought the bag to the rear of the Saturn, placed it on the ground, and returned to the unit. One of the females placed the bag in the trunk. The females then got into the Saturn. One sat in the driver's seat and the other in the back seat. The defendant soon returned and sat in the front passenger seat, and the driver began to drive away.

After following it through two turns within the Pleasant View housing complex, the police stopped the Saturn, boxing it in from the front and rear with the assistance of a State police cruiser. The Saturn came to a stop on a public way in the middle of the lane of travel.

The officers quickly left their vehicles and approached the Saturn. All three occupants were removed from the vehicle, frisked, and handcuffed. No weapons were found on their persons. The defendant and the females were transported to a police station. The females were interviewed and later released; they were not charged with any crime.

Meanwhile, Sergeant Bell ordered the impoundment of the Saturn. Falandys and Pacheco inventoried the contents on site. The passenger area contained cellular telephones, personal papers, a pocketbook, and a sweatshirt. Pacheco pulled a lever and folded down the back seat to access the trunk. He retrieved

---

[5]The tip from the anonymous informant was not presented at trial.

[6]At trial, the victim described the bag as a "black Baby Phat bag." The victim recognized the bag as belonging to the defendant's cousin, and recalled that the defendant had used the bag in the victim's apartment when she and the defendant were dating. The victim accepted defense counsel's characterization of the bag as a "woman's pocketbook," but Detectives Cabral, Pacheco, and Falandys each expressed some uncertainty about that description and whether the style evoked any gender association.

from the trunk the dark bag that the defendant had carried out of unit 17B. The bag was leather, and it opened and closed with a drawstring. Pacheco opened the bag, finding a .22 caliber rifle with a sawed-off barrel, a .22 caliber magazine, a box containing fifty-two rounds of .22 caliber ammunition, and one spent shell casing.

2. *Motion to suppress.* The defendant argues that the judge improperly denied his motion to suppress the firearm. We disagree. As the motion judge concluded, the search of the vehicle was justified by the automobile exception to the warrant requirement.[7]

Warrantless searches are presumptively unreasonable, under both the Fourth Amendment to the United States Constitution and art. 14 of the Massachusetts Declaration of Rights, subject only to "a few specifically established and well-delineated exceptions." *Commonwealth* v. *Bostock*, 450 Mass. 616, 623-624 (2008), quoting *Commonwealth* v. *Cast*, 407 Mass. 891, 901 (1990). "One of those exceptions, commonly known as the 'automobile exception,' applies to situations where the police have probable cause to believe that a motor vehicle parked in a public place and apparently capable of being moved contains contraband or evidence of a crime." *Commonwealth* v. *Bostock*, *supra* at 624, and cases cited. Probable cause exists when "the facts and circumstances within the officer's knowledge at the time of making the search . . . were sufficient to warrant a prudent [person] in believing" that a location contained evidence or contraband. *Commonwealth* v. *Johnson, ante* 44, 49 n.6 (2011), quoting *Commonwealth* v. *Bostock, supra.* Under the automobile exception, a "lawful warrantless search of a motor vehicle, based on probable cause to search the vehicle, extends to all containers, open or closed, found within." *Commonwealth* v. *Cast, supra* at 908.

In the present case, there was probable cause for the arresting officers to believe that the automobile in which the defendant was traveling contained an illegally possessed firearm. Three individuals had warned the police that the defendant was likely

---

[7]The motion judge also concluded that the search was permissible as an inventory search of a lawfully impounded vehicle. Having concluded that the search was lawful under the automobile exception, we need not reach this issue.

armed: David Silvia, the bystander to the assault, who recounted
the defendant's threat to shoot him if he did not back away; the
victim's father, who stated that the defendant usually carried
weapons; and an anonymous informant, who told Detective
Cabral about the defendant's recent firearm and drug related
activities.[8] When the firearm was not found on the defendant's
person, police appropriately concluded that it was likely located
in the automobile. This was a sufficient basis on which to search
the entire vehicle and all containers therein — especially the
black bag that the officers had just observed in the defendant's
possession. See *Commonwealth* v. *Cast, supra* at 902-903.

The sum of the information provided to the police by these
three individuals was sufficient even absent further corrobora-
tion of their reliability. See *Commonwealth* v. *Upton,* 394 Mass.
363, 374-375 (1985). We have long distinguished between
anonymous informants on the one hand, and bystanders, victims,
and participants who provide information about crimes to the
police, on the other. See *Commonwealth* v. *Alvarado,* 427 Mass.
277, 283 (1998); *Commonwealth* v. *Burt,* 393 Mass. 703, 709-
710 (1985), and cases cited. The statement of Silvia, an
"ordinary citizen who witnessed a violent crime . . . could be
regarded as reliable without any prior demonstration of his
reliability." *Commonwealth* v. *Bowden,* 379 Mass. 472, 477
(1980). The information from the victim's father and of the
anonymous informant corroborated Silvia's account, regard-
less whether they were sufficiently verified to furnish probable
cause independently.

We reject the defendant's argument that, absent Silvia's
observation of a firearm, the defendant's threat to shoot Silvia
could not establish probable cause because the defendant may
have "simply lied" in order to escape pursuit.[9] For the purposes

[8]As the motion judge noted, the side-to-side head movements of the defend-
ant's female companions, which suggested nervousness about being watched,
further corroborated this information.

[9]To lend credence to his theory that he was fearful of Silvia, the defendant
points to Silvia's testimony at trial admitting that he had drunk five or six
beers that afternoon. Evidence of Silvia's drinking was not presented to the
motion judge, however, and we do not consider it in our present review. See
*Commonwealth* v. *Johnson, ante* 44, 48 (2011), citing *Commonwealth* v.
*Grandison,* 433 Mass. 135, 137 (2001).

of forming probable cause, the police are entitled, if not required, to take seriously a fleeing felon's threat to shoot a bystander. "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Commonwealth* v. *Cast, supra* at 895, quoting *Draper* v. *United States*, 358 U.S. 307, 313 (1959). A reasonable and prudent officer, knowing that the defendant had just committed a violent assault and had threatened to shoot a witness, would have appropriately concluded that the defendant was carrying a firearm, especially when other sources confirmed that the defendant regularly carried one. The defendant is bound by his own admission of criminal conduct, even when spoken to facilitate a getaway. See *Commonwealth* v. *Gentile*, 437 Mass. 569, 572, 576-577 (2002) (defendant's excuse that truck contained "pot pipe," offered to justify refusal to permit search of truck for evidence of kidnapping, furnished probable cause to search truck for possession of marijuana).[10]

3. *Sufficiency of the evidence of possession.* The defendant next argues that the judge erred by denying his motion for a required finding of not guilty with respect to possession of the firearm. The defendant contends that there was insufficient evidence to prove that he knew the firearm was located in the black bag or that he exercised control over it. The thrust of the defendant's argument is that there is no reason to connect him with the contents of the black bag, characterized by defense counsel as a "woman's pocketbook," which he only briefly carried outside before a woman placed it in the trunk of the blue Saturn. "The test we apply is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Commonwealth* v. *Gonzalez*, 452

---

[10]The defendant erroneously contends that a finding of probable cause cannot rest exclusively on the defendant's own statement. While we require evidence in addition to an accused's confession to support a conviction, the concerns underlying that requirement are not relevant to the determination of probable cause. See *Commonwealth* v. *Forde*, 392 Mass. 453, 457-458 (1984). In any case, as noted above, here other sources of information contributed to the finding of probable cause.

Mass. 142, 146 (2008), quoting *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). We conclude that there was sufficient evidence to support a guilty verdict.

In the present case, the jury were charged on all three theories of possession: actual, joint, and constructive. "Possession implies 'control and power,' . . . exclusive or joint . . . , or, in the case of 'constructive possession,' knowledge coupled with the ability and intention to exercise dominion and control." *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 409 (1989), quoting *Commonwealth* v. *Rosa*, 17 Mass. App. Ct. 495, 498 (1984). Because knowledge is an element of G. L. c. 269, § 10 (*a*), regardless of the theory of possession, the evidence must support a finding that the defendant knew that the bag contained a firearm. See *Commonwealth* v. *Albano*, 373 Mass. 132, 134-135 (1977).

Proof of possession and knowledge may be established by circumstantial evidence and the inferences that can be drawn therefrom. *Commonwealth* v. *Gonzalez, supra*, quoting *Commonwealth* v. *Brzezinski, supra*. "Whether an inference is warranted or is impermissibly remote must be determined, not by hard and fast rules of law, but by experience and common sense." *Commonwealth* v. *Gonzalez, supra*, quoting *Commonwealth* v. *Arias*, 29 Mass. App. Ct. 613, 618 (1990), *S.C.*, 410 Mass. 1005 (1991). "While presence in an area where contraband is found 'alone cannot show the requisite knowledge, power, or intention to exercise control over the [contraband] . . . presence, supplemented by other incriminating evidence, will serve to tip the scale in favor of sufficiency.' " *Commonwealth* v. *Gonzalez, supra*, quoting *Commonwealth* v. *Arias, supra*.

The evidence warranted the inferences that the defendant knew that the black bag contained a firearm, and that he actually and constructively possessed this bag. Silvia testified at trial that the defendant threatened him, "Don't come any closer or I'll cap you." As discussed, this statement sufficed to warrant the inference that the defendant was carrying a firearm at the time of the assault. Cf. *Commonwealth* v. *Jackson*, 419 Mass. 716, 722-725 (1995); *Commonwealth* v. *Delgado*, 367 Mass. 432, 435-437 (1975); *Commonwealth* v. *King*, 69 Mass. App. Ct. 113, 116-119 (2007) (jury entitled to find that defendant

committed armed robbery when he threatened to shoot victim and subsequently had time to dispose of firearm, even if firearm never found). Approximately thirty minutes later, the defendant was observed carrying a black bag that the victim recognized as belonging to the defendant's cousin and that the defendant had used when he and the victim were dating. A rational jury could reasonably have inferred that, when the defendant was carrying the same black bag out to the vehicle, he knew that the bag contained a firearm and he was exercising power and control over it. The jury could further have found that the defendant maintained the ability and intention to exercise dominion and control over the bag, even after he entered the vehicle as a passenger. Passengers do not relinquish constructive possession over bags in the trunk merely because another individual is driving the vehicle. See *Commonwealth* v. *Sanchez*, 40 Mass. App. Ct. 411, 416-417 (1996) (evidence sufficient that passenger constructively possessed drugs found in suitcase in trunk). It is well established that constructive possession does not require exclusive control. *Commonwealth* v. *Elysee*, 77 Mass. App. Ct. 833, 847-848 (2010), citing *Commonwealth* v. *Beverly*, 389 Mass. 866, 870 (1983) (upholding judgments that passengers constructively possessed firearms found on floor of vehicle).

Taking all rational inferences in favor of the Commonwealth, the evidence amply supported the conclusion that the defendant knew that the bag contained a firearm, exercised dominion and control over the bag when he brought it outside unit 17B, and continued to maintain the ability to control the bag even after it was placed into the vehicle's trunk. The judge correctly denied the defendant's motion for a required finding of not guilty.[11]

4. *Admission of the photograph of the victim.* The defendant next contends that the judge improperly permitted the jury to view a photograph of the victim's injuries. The judge permitted the prosecutor, over the defendant's objection, to display a photograph of the victim's bloodied face during the testimony

[11]Because the evidence supported theories of both actual possession and constructive possession, we need not consider the defendant's contention that the jury's general verdict may have relied on an unproved theory of possession. In any case, this challenge lacks merit for the reasons expressed in *Commonwealth* v. *Fernandez*, 48 Mass. App. Ct. 530, 532 (2000), and cases cited.

of two police officers and of the victim. The witnesses used this photograph to illustrate their testimony. Aside from the photograph, testimony about the assault included that of the victim, the police officers, and civilian bystanders. The victim's medical records were also admitted into evidence.

"The question whether the inflammatory quality of a photograph outweighs its probative value and precludes its admission is determined in the sound discretion of the trial judge." *Commonwealth* v. *Pena*, 455 Mass. 1, 12 (2009), quoting *Commonwealth* v. *DeSouza*, 428 Mass. 667, 670 (1999).[12] "The fact that a photograph is cumulative of other evidence has not required the exclusion of the photograph." *Commonwealth* v. *Pena, supra*, quoting *Commonwealth* v. *DeSouza, supra.* "A judge may appropriately attempt to mitigate the potentially prejudicial nature of a photograph by instructing the jury that the photograph is to be used in analyzing the evidence and is not designed to elicit sympathy." *Commonwealth* v. *Pena, supra*, quoting *Commonwealth* v. *DeSouza, supra.* "[W]e have rarely reversed a conviction because of the introduction of photographs of a victim." *Commonwealth* v. *Meinholz*, 420 Mass. 633, 635 (1995), and cases cited.

The admission of the challenged photograph was within the judge's discretion. The witnesses used the photograph to illustrate and corroborate their testimony. See *Commonwealth* v. *Chalifoux*, 362 Mass. 811, 817 (1973) (upholding admission of photographs of assault victim in part because they corroborated oral testimony). Notwithstanding the other evidence in support of the assault charge, the judge did not abuse his discretion in deciding that these illustrations had "evidential value on a material matter." *Commonwealth* v. *Keohane*, 444 Mass. 563, 573 (2005), quoting *Commonwealth* v. *Ramos*, 406 Mass. 397, 407 (1990).

The defendant further contends that, even if admitting the photograph was within the judge's discretion, the judge prejudiced the defendant by permitting the prosecutor to display

---

[12]We have directed judges to exercise special caution when considering photographs of dead bodies that have been altered or have decomposed, a situation not presented here. See *Commonwealth* v. *Cardarelli*, 433 Mass. 427, 431 (2001), citing *Commonwealth* v. *Bastarache*, 382 Mass. 86, 106 (1980).

the photograph for longer than necessary. The defendant objected once to the prolonged display of the photograph, during the testimony of Sergeant Bell. The judge overruled the objection and reminded the jury to consider the photograph only for its probative value. Sergeant Bell's testimony continued for another two pages in the transcript. Even assuming, arguendo, that the judge permitted similar lingering on the other two occasions, the defendant has not demonstrated that the judge thereby abused his discretion. See *Commonwealth* v. *Correia*, 65 Mass. App. Ct. 27, 29-30 (2005) (declining to reverse convictions where photograph of victim was permitted to remain on television monitor for much of prosecutor's closing argument). In addition, it is difficult to conceive of any prejudice to the defendant. See *Commonwealth* v. *Cruz*, 445 Mass. 589, 591 (2005). The prosecutor legitimately displayed this photograph during the testimony of three witnesses, and, as the trial judge noted in *Commonwealth* v. *Correia*, *supra* at 30, "[t]he jury [had] it for a longer time in front of them when they deliberate[d]."

Last, the judge properly instructed the jury on three separate occasions to consider the photograph only for its probative value. The defendant expresses concern that the judge did not repeat this limiting instruction during the final charge, an omission to which defense counsel did not object. There was no error.

5. *Jury instructions.* The defendant next objects to the sufficiency of the distinction drawn in the jury instructions between the separate acts supporting the charges of assault and battery and assault and battery by means of a dangerous weapon. "Assault and battery is a lesser included offense of assault and battery by means of a dangerous weapon." *Commonwealth* v. *Jackson*, 80 Mass. App. Ct. 528, 529 (2011), quoting *Commonwealth* v. *Connolly*, 49 Mass. App. Ct. 424, 426 (2000). See G. L. c. 265, §§ 13A, 15A (c). Convictions of both greater and lesser included acts are permitted only where they "rest on separate and distinct acts." *Commonwealth* v. *Jackson*, *supra*, quoting *Commonwealth* v. *King*, 445 Mass. 217, 225 (2005), cert. denied, 546 U.S. 1216 (2006). The defendant concedes, as he must, that kicking the victim with a shod foot, the basis of the charge for assault and battery by means of a dangerous weapon, constituted a separate and distinct act from punching

the victim above the eye, the basis of the assault and battery charge. See *Commonwealth* v. *Jackson, supra* at 530; *Commonwealth* v. *Connolly, supra* at 427. The defendant contends, however, that the judge failed to clarify this distinction sufficiently to the jury, so that the jury may have rendered duplicative convictions for the same act. Because the defendant did not raise this concern below, we review his claim only to determine whether a substantial risk of a miscarriage of justice occurred. *Commonwealth* v. *Jackson, supra* at 529, citing *Commonwealth* v. *Vick*, 454 Mass. 418, 430 n.13 (2009).

Although the judge did not use the exact words "separate and distinct act," he made perfectly clear that the two indictments were based on separate acts. When instructing on assault and battery, he told the jury: "This refers to the alleged incident of [the defendant] taking a closed fist and striking the area above the eye of [the victim]." In instructing on the crime of assault and battery by means of a dangerous weapon, he told them: "Now we're referring to what has been referred to as a kicking with a shod foot . . . ." No jury thus instructed could reasonably have been confused about which acts supported which charge.

6. *Conviction under G. L. c. 269, § 10 (a).* Finally, the defendant argues that his convictions of unlawful possession of a firearm and being a subsequent offender violated the due process guarantees of the Fourteenth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights, as well as his Second Amendment right to keep and bear arms.[13] Specifically, he contends that the lack of a license is an element of the crime that the Commonwealth bears the burden of proving; that the Commonwealth failed to offer any evidence that he did not possess a firearm license;[14] and that the

---

[13]The defendant did not make these claims at trial. He first raised them in a supplemental memorandum of law submitted to the Appeals Court after his brief was filed, but before the Commonwealth filed its brief. The Commonwealth did not object and responded in its brief to the defendant's newly advanced arguments.

[14]The defendant urges us to reverse his convictions because of the Commonwealth's failure to produce some evidence that he did not possess a firearm identification (FID) card. The indictment on which the defendant was convicted, however, charged that the defendant "did knowingly have in his possession, or under his control in a vehicle, a loaded or unloaded firearm, as

Commonwealth's reliance on G. L. c. 278, § 7 (§ 7),[15] to place on him the burden of producing evidence of licensure, and to create a presumption of unauthorized possession in its absence, violates both his due process rights as articulated by the United States Supreme Court in *Tot* v. *United States*, 319 U.S. 463 (1943), and his Second Amendment right to own and bear a firearm as applied to the States in *McDonald* v. *Chicago*, 130 S. Ct. 3020 (2010) (*McDonald*). We disagree.

With respect to the Second Amendment, the statute that the defendant was convicted of violating prohibits generally the carrying of a firearm outside of one's home or business.[16] G. L. c. 269, § 10 (*a*) (§ 10 [*a*]). The prohibition is not a blanket one, and is complemented by a licensing regime and a number of statutory exemptions that do not operate to "totally ban[] handgun possession in the home" or elsewhere. *District of Columbia* v. *Heller*, 554 U.S. 570, 628 (2008) (*Heller*). Contrast *McDonald, supra* at 3026, 3050 (invalidating provision of

defined in G. L. c. 140, § 121, the defendant not being present in or on his residence or place of business, and not having in effect a *license to carry* firearms" (emphasis added). See *Commonwealth* v. *Eberhart, post* 814 n.11 (2012). Under our statutory scheme, an FID card and a license to carry are distinct items with distinct privileges: the former allows the holder to own, transfer, or possess a firearm in his residence or place of business, while the latter enables the holder to carry a firearm outside of his residence or place of business. Compare G. L. c. 269, § 10 (*a*), and G. L. c. 140, §§ 131 and 131F (license to carry), with G. L. c. 269, § 10 (*h*) (1), and G. L. c. 140, § 129C (FID card). See also *Commonwealth* v. *Johnson, ante* 44, 55 n.14 (2011), citing *Commonwealth* v. *Powell*, 459 Mass. 572, 587-588 (2011), cert. denied, 132 S. Ct. 1739 (2012). We, therefore, reformulate the language used to describe the defendant's challenge to align with the facts of the case and the applicable licensing requirement.

[15]General Laws c. 278, § 7 (§ 7), provides: "A defendant in a criminal prosecution, relying for his justification upon a license . . . shall prove the same; and, until so proved, the presumption shall be that he is not so authorized."

[16]General Laws c. 269, § 10 (*a*) (§ 10 [*a*]), provides for the punishment of "[w]hoever, except as provided or exempted by statute, knowingly has in his possession; or knowingly has under his control in a vehicle; a firearm, loaded or unloaded . . . without either: (1) being present in or on his residence or place of business; or (2) having in effect a license to carry firearms issued under [G. L. c. 140, § 131]; or (3) having in effect a license to carry firearms issued under [G. L. c. 140, § 131F]; or (4) having complied with the provisions of [G. L. c. 140, §§ 129C and 131G]; or (5) having complied as to possession of an air rifle or BB gun with the requirements imposed by [G. L. c. 269, § 12B]."

Chicago ordinance that required registration certificate to possess firearm, yet prohibited registration of most handguns, "effectively banning handgun possession by almost all private citizens," and invalidating provision of village of Oak Park ordinance that forbade possession of "any firearm"); *Heller, supra* at 575, 636 (affirming judgment invalidating provisions of District of Columbia code that prohibited both carrying of unregistered handguns and registration of handguns).

The defendant does not challenge the constitutionality of the licensing scheme itself, nor could he properly do so. See *Commonwealth* v. *Powell*, 459 Mass. 572, 589-590 (2011), cert. denied, 132 S. Ct. 1739 (2012) (concluding that defendant could not challenge application of § 10 [*a*] where he never applied for license). See also *Commonwealth* v. *Loadholt*, 460 Mass. 723, 726 (2011) ("requirement of . . . a licensing system[] does not by itself render the statute unconstitutional on its face"). He also does not allege that he falls within one of its statutory exemptions. The defendant does contend, however, that the allocation of burdens under § 7 contravenes the holdings of *McDonald* and *Heller* by permitting a presumption of criminality from constitutionally protected conduct — the possession of a firearm.

The premise of this argument is flawed, for it assumes a breadth to those decisions far beyond their holdings. Nothing in the *McDonald* and *Heller* decisions has altered or abrogated our jurisprudence regarding the elements of the crime of unlawful possession of a firearm or the allocation of the burdens of production and proof with respect to the affirmative defense of licensure. *Commonwealth* v. *Loadholt, supra* at 726-727 (declining to address defendant's challenge to application of § 7 to prosecution for unlawful possession of firearm and ammunition). As we — and other courts — have explained, the Supreme Court did not announce in those decisions an unfettered Second Amendment right "to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose," *Heller, supra* at 626, but rather, articulated a right "to possess a handgun in the home for the purposes of self-defense." *McDonald, supra* at 3050. *Heller, supra* at 635 ("right of law-abiding, responsible citizens to use arms in defense of hearth and home"). See, e.g., *Com-*

*monwealth* v. *Powell, supra* at 589; *Williams* v. *State*, 417 Md. 479, 494 n.10, cert. denied, 132 S. Ct. 93 (2011); *Herrington* v. *United States*, 6 A.3d 1237, 1242-1243 (D.C. 2010). The case before us does not implicate this right: the defendant was charged with and convicted of possessing a firearm in an automobile, not his home, and there was no evidence or suggestion that it was possessed for the purpose of defending the same. Therefore, requiring that he produce some evidence of a license at trial — and recognizing a consequent presumption of unauthorized possession where he fails to do so — does not infringe on constitutionally protected conduct. Contrast *Herrington* v. *United States, supra* at 1243-1244 (concluding that possessing "handgun ammunition" in home was constitutionally protected conduct, such that government must prove lack of registration as element of crime charged).

Having concluded that the application of § 7 to the defendant's prosecution for unlawful possession of a firearm in violation of § 10 (*a*) does not infringe on his Second Amendment right, we turn now to his due process argument. In *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977) (*Jones*), we concluded that the absence of a license was not an element of the crime under § 10 (*a*), but that the "holding of a valid license brings the defendant within an exception to the general prohibition against carrying a firearm, and is an affirmative defense." *Id.* We further determined that, "[i]n the absence of evidence with respect to a license, no issue is presented with respect to licensing [and] the burden is on the defendant to come forward with evidence of the defense. If such evidence is presented, however, the burden is on the prosecution to persuade the trier of facts beyond a reasonable doubt that the defense does not exist." *Id.* We have consistently adhered to this holding and see no cause to upset it now.[17] See, e.g., *Commonwealth* v. *Powell, supra* at 582; *Commonwealth* v. *Colon*, 449 Mass. 207, 226, cert. denied, 552 U.S.

---

[17]Consequently, we reject the defendant's assertion that § 7 creates a statutory presumption that relieves the Commonwealth of proving an element of the crime, subject to the dictates of *Tot* v. *United States*, 319 U.S. 463 (1943), and its progeny. We have repeatedly affirmed that the elements of the crime of unlawful possession of a firearm are the following: "the defendant knowingly possessed the firearm"; and "the firearm met the requirements of a firearm as defined by G. L. c. 140, § 121" (citations omitted). *Commonwealth* v. *Young*,

1079 (2007); *Commonwealth* v. *Anderson*, 445 Mass. 195, 213-214 (2005); *Commonwealth* v. *Couture*, 407 Mass. 178, 181-183, cert. denied, 498 U.S. 951 (1990); *Commonwealth* v. *Tuitt*, 393 Mass. 801, 810 (1985). See also Burke *vs.* Spencer, U.S. Dist. Ct., No. 05-12266-DPW (D. Mass., Nov. 23, 2011) (under Massachusetts law, issue of license is affirmative defense to, not element of, unlawful possession of firearm).

Due process requires that the prosecution prove beyond a reasonable doubt each element of the crime with which the defendant is charged. *In re Winship*, 397 U.S. 358, 361-364 (1970). See *Commonwealth* v. *Munoz*, 384 Mass. 503, 509 (1981).

453 Mass. 707, 713 n.9 (2009), and cases cited. See *Commonwealth* v. *Johnson*, *supra* at 52-53; *Commonwealth* v. *Sann Than*, 442 Mass. 748, 752 (2004).

That we have, in other contexts, described the crime in relatively sweeping terms does not diminish this conclusion with regard to the essential elements of the crime. See, e.g., *Commonwealth* v. *Alvarado*, 423 Mass. 266, 269 (1996) ("Carrying a gun is not a crime. Carrying a firearm without a license [or other authorization] is"); *Commonwealth* v. *Couture*, 407 Mass. 178, 180, cert. denied, 498 U.S. 951 (1990); *Commonwealth* v. *Toole*, 389 Mass. 159, 163-164 (1983). In those cases, we concluded that the mere presence of a firearm without more did not furnish probable cause or reasonable suspicion sufficient to justify the seizure of an individual by a police officer in the field, see, e.g., *Commonwealth* v. *Alvarado*, *supra* at 267-268 (officers recovered handgun from motor vehicle driven by defendant after anonymous caller reported seeing "a handgun inside the motor vehicle and . . . wrapped in a towel"); *Commonwealth* v. *Couture*, *supra* at 178-179 (officer recovered handgun from defendant's motor vehicle after store clerk reported seeing handgun in defendant's pocket); we were not asked to examine the requirements of § 10 (*a*) in the context of the proof necessary at a trial. There is, therefore, no meaningful conflict between the manner in which those cases, and the ones listed in the previous paragraph, describe the crime of unlawful possession of a firearm.

Relatedly, given the facts presented, there is no conflict between those decisions regarding reasonable suspicion and probable cause and the holding of *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977) (*Jones*). As we explained in *Commonwealth* v. *Couture*, *supra* at 182-183, there is a fundamental difference between an individual "who, having merely been seen in public with a handgun, and without any opportunity to respond as to whether he has a license, is forced out of his vehicle at gunpoint and subjected to an invasive search," *id.* at 183, and the defendant before us, who, having been formally charged with the crime of unlawful possession of a firearm, is given the opportunity at trial to justify that possession with some evidence of a license and fails to do so. Our respect for an individual's rights under the Fourth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights against unreasonable searches and seizures on the street has no bearing on the allocation of burdens at trial.

It does not, however, prohibit the States from "plac[ing] on defendants the burden of proving affirmative defenses." *Gilmore v. Taylor*, 508 U.S. 333, 341 (1993), and cases cited. While we adhered to this tenet at common law, we now generally impose on criminal defendants only the lesser burden of production in this regard, and "generally . . . require[] the prosecution to prove the absence of properly raised affirmative defenses." *Commonwealth* v. *Cabral*, 443 Mass. 171, 178 n.15 (2005). See *Commonwealth* v. *Shanley*, 455 Mass. 752, 780 (2010), quoting *Commonwealth* v. *Cabral*, *supra* at 179 (where an affirmative defense is asserted, "the defendant takes on a burden of production because the Commonwealth has no burden of disproving an affirmative defense 'unless and until there is evidence supporting such defense' "); *United States* v. *Deleveaux*, 205 F.3d 1292, 1298-1299 (11th Cir. 2000).

License is a common affirmative defense. See, e.g., *State* v. *Valinski*, 254 Conn. 107, 126 (2000) (special operator's permit affirmative defense to offense of driving with suspended license). Cf. Mass. R. Civ. P. 8 (c), 365 Mass. 749 (1974) (listing "license" among affirmative defenses party in civil action must include in response to pleadings); *Worldwide Church of God* v. *Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1114 (9th Cir. 2000), cert. denied, 532 U.S. 958 (2001) ("The existence of a license creates an affirmative defense to a claim of copyright infringement"). Its application to firearm possession charges has been fully recognized in other jurisdictions, see e.g., *Watt* v. *State*, 31 So. 3d 238, 242 (Fla. Dist. Ct. App. 2010), quoting *State* v. *Robarge*, 450 So. 2d 855, 856 (Fla. 1984); *Taylor* v. *State*, 578 N.E.2d 664, 666 (Ind. 1991), citing *Washington* v. *State*, 517 N.E.2d 77 (Ind. 1987), and is wholly appropriate under our statutory scheme. See *Jones*, *supra* at 406.

While "[t]he phrase 'affirmative defense' is a term of art," *Commonwealth* v. *Cabral*, *supra* at 178, we have "identified [its] primary characteristic . . . as whether [the defense] 'involves a matter of . . . justification peculiarly within the knowledge of the defendant on which he can fairly be required to adduce supporting evidence.' "[18] *Commonwealth* v. *Vives*, 447 Mass. 537,

---

[18]There are, of course, constitutional limits beyond which States may not go

540-541 (2006), quoting *Commonwealth* v. *Cabral*, *supra* at 179. See *United States* v. *Hartsock*, 347 F.3d 1, 8 (1st Cir. 2003), quoting 1 W.R. LaFave, Substantive Criminal Law § 1. 8(c) (1986) (affirmative defense is one that may " 'negative guilt by cancelling out the existence of some required element of the crime,' . . . provide a justification sufficient to overcome or mitigate criminal liability, . . . [or assert] individual exceptions to substantive crimes").

The existence of a license — and, more specifically, the existence of a license to carry a firearm — is such a matter. See *Lively* v. *State*, 427 A.2d 882, 884 (Del. 1981) ("possession of a license is best viewed as a defense to the charge of Carrying a Concealed Weapon, since it is a matter more immediately within the knowledge of the defendant himself, and more readily proven by him"); *State* v. *Carter*, 161 Wash. App. 532, 540-542 (2011), quoting *State* v. *Moses*, 79 Wash. 2d 104, 110 (1971), cert. denied, 406 U.S. 910 (1972) (identifying as affirmative defense exemption to unlawful possession of machine gun charge for those licensed in compliance with Federal law and engaged in permitted activities, in part because "[i]t is generally held in criminal cases that, if the facts of an affirmative defense lie immediately within the knowledge of the defendant, the onus probandi, under the principle of 'balancing of convenience,' should be his"). Under Massachusetts law, there is no Statewide entity responsible for issuing licenses for the carrying of firearms. See G. L. c. 140, § 122. Rather, that power is dispersed among hundreds of local police departments. *Id.* Although those licensing authorities are required to record all issued licenses in their "books, forms or electronic files" and notify the Department of Criminal Justice Information Services (department) of such ac-

in labeling as affirmative defenses what may seem to be elements of the crime defined in a statute. *Patterson* v. *New York*, 432 U.S. 197, 210 (1977). "[I]t is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime," *id.*, quoting *McFarland* v. *American Sugar Ref. Co.*, 241 U.S. 79, 86 (1916), or "command that the finding of an indictment, or mere proof of the identity of the accused, should create a presumption of the existence of all facts essential to guilt." *Patterson* v. *New York*, *supra*, quoting *Tot* v. *United States*, 319 U.S. 463, 467 (1943). Recognizing licensure as an affirmative defense, imposing a presumption of unauthorized possession in the absence of such evidence, and allocating the burdens of production and persuasion accordingly do not approach those outer limits.

tions, G. L. c. 140, § 122A,[19] a requirement that the prosecutor prove in its case-in-chief that no such license exists would impose a comparatively onerous burden. *Jones, supra* at 408. It would require a prosecutor, striving to sustain the burden of proof beyond a reasonable doubt, to review the department's records and the police departments in any towns or cities in which the defendant may have lived. This seems a daunting task in any case, but especially those in which the defendant may have assumed an alias or resided at different, or suspect locations, or where there is a potential delay in processing the records at either the local or State level.

On the other hand, placing the onus on the defendant to produce some evidence at trial that he was licensed to carry a firearm would involve the "very simple task," *id.*, of "produc[ing] that slip of paper indicating [such authorization]." *Commonwealth* v. *Couture*, 407 Mass. 178, 182 (1990). The defendant would be the party to apply for the license, receive it, and maintain it. Therefore, as the existence of a license is within the defendant's firsthand knowledge, and the act of producing it would not require his testimony, *Jones, supra* at 408-409, it is "entirely appropriate" to require the defendant to produce some evidence of that license in order to raise it as an issue at trial. *Commonwealth* v. *Cabral, supra* at 181. See *United States* v. *Deleveaux, supra* at 1300.

Finally, the United States Supreme Court has explicitly recognized that States may place the burden of proving an affirmative defense on a defendant, see *Martin* v. *Ohio*, 480 U.S. 228, 235-236 (1987), and *Patterson* v. *New York*, 432 U.S. 197, 210 (1977); particularly where there exists a "disparity in convenience of proof and opportunity for knowledge, as, for instance, where a general prohibition is applicable to every one who is unable to bring himself within the range of an exception." *Morrison* v. *California*, 291 U.S. 82, 91 (1934). See *Patterson* v. *New York, supra*; *United States* v. *Deleveaux, supra*; *United States* v. *Unser*, 165 F.3d 755, 765 (10th Cir.), cert. denied, 528 U.S. 809

---

[19]Since the time of the defendant's trial, this provision has been amended to direct the licensing authority to notify the criminal history systems board of any license that it issued. G. L. c. 140, § 122A, as amended by St. 2010, c. 256, §§ 85, 86.

(1999). Although the language of § 7 suggests that the defendant must shoulder the entire burden of proof (i.e., the burden of production and the burden of persuasion) as discussed, we have interpreted it only to impose the burden of production on the defendant, maintaining the ultimate burden of disproving a properly raised affirmative defense on the prosecution. *Jones*, *supra* at 406 (application of § 7 to crime of unlawful possession of firearm under § 10 [*a*]). See *Commonwealth* v. *Munoz*, 384 Mass. 503, 506-508 (1981) (application of § 7 to crime of operating uninsured motor vehicle under G. L. c. 90, § 34J); *Commonwealth* v. *Jefferson*, 377 Mass. 716, 718-719 (1979) (application of § 7 to crime of unlawful possession of hypodermic needles and syringes under G. L. c. 94C, § 27). But see *Commonwealth* v. *Cabral, supra* at 180 n.18 (alluding to defendant's burden to prove — not present some evidence of — valid license under § 7). There is no constitutional deficit in this allocation of the burdens.[20] See Burke *vs.* Spencer, U.S. Dist. Ct., No. 05-12266-DPW (D. Mass. Nov. 23, 2011), citing *Gilmore* v. *Taylor*, 508 U.S. 333, 341 (1993) ("The Supreme Court has explicitly recognized that [S]tates may constitutionally place the burden of production for affirmative defenses on defendants").

In sum, we conclude that the application of § 7 to the crime of unlawful possession of a firearm in violation of G. L. c. 269, § 10 (*a*), does not implicate the Supreme Court's recent application of the Second Amendment to the States and satisfies due process requirements. In the absence of any showing that the defendant possessed a license to carry the firearm with

---

[20]In an unpublished memorandum of decision in Gonzalez *vs.* Dickhaut, U.S. Dist. Ct., No. 08-11657 (D. Mass. Nov. 30, 2010), the judge concluded that applying the burdens and presumption of § 7 to a joint venturer, such that the joint venturer would bear the burden of producing evidence of his cohort's FID card to possess ammunition, violated Federal due process principles. The theory of liability in that case was not based on the defendant's joint possession, either actual or constructive, of the ammunition, but rather on his role as a joint venturer in an armed assault committed by another person who alone possessed both a firearm and the ammunition at issue. While imposing the burden of production on a joint venturer in these circumstances might be unfair because he would be in no better position than the prosecutor to ascertain whether an FID card had been issued to the person who allegedly possessed the ammunition, this unique situation is not presented here. See *Commonwealth* v. *Loadholt*, 460 Mass. 723, 727 n.9 (2011) (noting that Gonzalez *vs.* Dickhaut, *supra*, was "inapposite" where defendant was not charged as joint venturer).

which he was found in an automobile and not within his home or business, the Commonwealth was under no obligation to introduce evidence that he lacked such a license.

7. *Conclusion.* We affirm the denial of the defendant's motion to suppress and affirm his convictions.

*So ordered.*