NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-471

COMMONWEALTH

vs.

GERARDO J. GOMEZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a bench trial in the Roxbury Division of the Boston Municipal Court, the defendant was found guilty of unlawfully carrying a firearm.[1] On appeal, the defendant challenges the sufficiency of the evidence and argues that the judge erred in requiring him to produce evidence of licensure as an affirmative defense. We affirm.

Background. We set forth the facts in the light most favorable to the Commonwealth. See Commonwealth v. Colas, 486 Mass. 831, 833 (2021), citing Commonwealth v. Latimore, 378

---

[1] The defendant was found not guilty of carrying a loaded firearm, possession of ammunition without a firearm identification, assault by means of a dangerous weapon, assault and battery on a family or household member, and strangulation or suffocation. Prior to trial, the Commonwealth dismissed charges of possession with intent to distribute a class B substance and possession of a firearm while committing a felony.

Mass. 671, 677 (1979).  On October 9, 2021, the defendant and his girlfriend, Liza Tyler, had an altercation in the street outside of the defendant's grandmother's house.  Sherry Brooks, the girlfriend of the defendant's grandmother, witnessed the altercation and heard Tyler yell in a nervous and scared voice, "gun, gun," while the defendant held a black object in his hand. At trial, she demonstrated the shape of the black object by holding her hand with her finger pointed out and her thumb pointed up.  While observing the altercation, Brooks called the police.  Brooks saw most of the altercation from fifty to sixty feet away and moved closer (thirty feet away) when the police asked for the license plate number of the car.  Brooks saw the defendant take the gun out of the trunk of the car but did not know where he put it after she saw him swing it at Tyler. Brooks acknowledged that she was not wearing her glasses at that time, and that she needs them to read and see clearly.

After Brooks called the police, Boston police officers Raymond Soto and Jasmany Beato responded to 45 Keegan Street and found the defendant and Tyler fighting behind a car in the middle of the street.  When the officers approached the car, Tyler got in the driver's seat, and the defendant got in the passenger seat.  Tyler attempted to turn on the car, and the officers ordered both individuals out of the car.  The defendant began to walk away and was detained.  The officers conducted an

2

inventory search of the car, and Officer Soto found a firearm in the glove compartment on the passenger side of the car.

Discussion. 1. Sufficiency of the evidence. "In determining whether the Commonwealth met its burden to establish each element of the offense charged, we apply the familiar Latimore standard. . . . '[The] question is whether, after viewing the evidence in the light most favorable to the [Commonwealth], any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" Colas, 486 Mass. at 836, quoting Latimore, 378 Mass. at 677. "The inferences that support a conviction 'need only be reasonable and possible; [they] need not be necessary or inescapable.'" Commonwealth v. Waller, 90 Mass. App. Ct. 295, 303 (2016), quoting Commonwealth v. Woods, 466 Mass. 707, 713 (2014).

"[T]o convict the defendant of unlicensed carrying of a firearm outside his residence or place of business, the Commonwealth was required to prove that he 'knowingly ha[d] in his possession; or knowingly ha[d] under his control in a vehicle; a firearm, loaded or unloaded, as defined in section one hundred and twenty-one of chapter one hundred and forty.'" Commonwealth v. Watkins, 98 Mass. App. Ct. 419, 421 (2020), quoting G. L. c. 269, § 10 (a). The Commonwealth may proceed on a theory of constructive possession if it proves that the

3

defendant had "knowledge coupled with the ability and intention to exercise dominion and control."  Commonwealth v. Woods, 94 Mass. App. Ct. 761, 765 (2019), quoting Commonwealth v. Than, 442 Mass. 748, 751 (2004).

Viewed in the light most favorable to the Commonwealth, see Latimore, 378 Mass. at 676-677, the testimony from Brooks and Officer Soto, taken together, was sufficient to prove that the defendant knowingly possessed a gun.  Brooks testified that she saw the defendant take a gun from the trunk of the car and swing it at Tyler who was on the ground.  She also testified that she heard Tyler excitedly yelling, "gun, gun."  To the extent that the defendant argues that Brooks' testimony was unreliable because she was not wearing her glasses, "questions of credibility belong properly to the trier of fact."  See Commonwealth v. Martin, 467 Mass. 291, 315 (2014); see also Commonwealth v. Semedo, 456 Mass. 1, 8 (2010) (reviewing court does not consider credibility of witnesses in Latimore analysis).

Additionally, Officer Soto's testimony, in conjunction with where the gun was found, was sufficient to establish that the defendant constructively possessed the gun.  Although a defendant's presence in an area where contraband is found, alone, is insufficient to show constructive possession, it may be sufficient when supplemented by additional incriminating

4

evidence as was the case here.  See Woods, 94 Mass. App. Ct. at 765-766.  Officer Soto saw the defendant enter the passenger side of the car, and the gun was found in the glove compartment in front of where he was seated.  See Commonwealth v. Blevins, 56 Mass. App. Ct. 206, 211-212 (2002) (location of gun on floor of car behind defendant gave defendant ability to exercise control over it).  Additionally, the defendant attempted to walk away after Officer Soto gave the exit order.  See Commonwealth v. Summers, 93 Mass. App. Ct. 260, 264 (2018) ("Flight is often considered a 'plus' factor supporting an inference that the occupant intended to exercise dominion and control over the illegal contraband.")  Moreover, the defendant's actions were also evidence of his consciousness of guilt.  See Commonwealth v. Watterson, 99 Mass. App. Ct. 746, 755 (2021), citing Commonwealth v. Carrion, 407 Mass. 263, 277 (1990).  Accordingly, the evidence sufficed.

2.  Licensure as an affirmative defense.  The defendant next claims that the judge violated his due process rights by requiring him to prove that he had a license to possess a firearm.  The parties disagree as to the proper standard of review.  The defendant argues the question is whether the error, if any, was harmless beyond a reasonable doubt.[2]  The

---

[2] The defendant contends that an objection would have been futile because at the time of his trial New York State Rifle & Pistol

5

Commonwealth contends that we review to determine whether any error created a substantial risk of a miscarriage of justice. We need not resolve this issue because under either standard, we conclude that there was no error.

Since at least 1844, Massachusetts has recognized that a license to carry is an affirmative defense to the crime of illegal possession of a firearm. See St. 1844, c. 102; Commonwealth v. Belou, 115 Mass. 139, 140 (1874). The Supreme Judicial Court has long held this practice (which places the burden of production of a license upon the defendant, and the ultimate burden of proof of absence of a license beyond a reasonable doubt on the Commonwealth) to be consistent with the Second Amendment to the United States Constitution. See Commonwealth v. Harris, 481 Mass. 767, 772 (2019); Commonwealth v. Gouse, 461 Mass. 787, 801-802 (2012).

The defendant contends that his conviction must be reversed because Massachusetts law that criminalizes possession of a firearm without a proper license is unconstitutional. The

Ass'n v. Bruen, 142 S. Ct. 2111 (2022), had not been decided. We also note that here, as in Commonwealth v. Gouse, 461 Mass. 787 (2012), the defendant did not challenge the constitutionality of the State firearm licensing scheme. In fact, he could not do so because the defendant never applied for a license. See Commonwealth v. Powell, 459 Mass. 572, 589-590 (2011), cert. denied, 565 U.S. 1262 (2012) (defendant could not challenge application for license where he did not apply for one).

6

defendant argues that the recent Supreme Court of the United States opinion in New York State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022) (Bruen), now requires the Commonwealth to prove beyond a reasonable doubt the absence of a firearm license as an element of firearms prosecutions, here G. L. c. 269, § 10 (a). Bruen held that the Second and Fourteenth Amendments to the Constitution protect an individual's right to bear arms outside of the home, see Bruen, 142 S. Ct. at 2135, and that the New York firearm licensing statute was unconstitutional because it vested discretion in licensing authorities to deny applications that satisfy statutory requirements but lack a perceived "need or suitability." Id. at 2123. From this, the defendant claims that the burden shifting procedure approved in Gouse, supra, can no longer be applied; he posits that Gouse has been abrogated by Bruen. We are not persuaded.[3] Nothing in Bruen suggests that the Second Amendment poses any challenges for State assignment of the burdens of production. See id. at 2123. Citing McDonald v. Chicago, 561 U.S. 742 (2010), the

---

[3] So far as we are aware, only a single court, the District of Columbia Court of Appeals, has held that proof of something that could otherwise be an affirmative defense must be made an element of the offense where a presumption is created that constitutionally protected conduct is unlawful. See Herrington v. United States, 6 A.3d 1237, 1243-1244 (D.C. 2010) (concluding that possessing "handgun ammunition" in home was constitutionally protected conduct, such that government must prove lack of registration as element of crime charged). And Gouse, supra at 801-802, did not so hold.

concurring opinion in Bruen confirmed that the Second Amendment right to bear arms does not prohibit laws that regulate who may purchase, possess, and carry firearms.  Bruen, 142 S. Ct. at 2162 (Kavanaugh, J., concurring).  In fact, Bruen emphasized that the Constitution does not prohibit licensing requirements for carrying a firearm in public, provided that the licensing criteria are objective.  Id. at 2138 n.9.  Bruen had no impact on the allocation of the burdens of proof in the prosecution of firearm offense, here G. L. c. 269, § 10 (a).

Having concluded that Bruen does not alter the allocation of the burden of proof in firearm prosecutions, the issue of licensure as an affirmative defense has been long settled in the Commonwealth.  And, the defendant's argument ignores the fact that we have "no power to alter, overrule or decline to follow the holding of cases the Supreme Judicial Court has decided." Commonwealth v. Dube, 59 Mass. App. Ct. 476, 485-486 (2003). Nor are we inclined to do so here.

Judgment affirmed.

By the Court (Meade, Rubin &
 Blake, JJ.[4]),

*Joseph F. Stanton*

Clerk

Entered:  February 13, 2023.

---

[4] The panelists are listed in order of seniority.